IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PUGGI VASQUEZ,
        Petitioner

v.

UNITED STATES OF AMERICA,
        Respondent

## SUPPLEMENT ADDRESSING APPLICABILITY OF BLAKELY V. WASHINGTON AND UNITED STATES V. BOOKER/FANFAN

With apology, the Petitioner is forced by the press of demand on legal resources to submit a generic pleading demonstrating that Blakely v. Washington, 124 S.Ct. 2531, 2537 [2004] (facts which increase the defendant's guideline sentence must be afforded Sixth Amendment protection), is retroactively applicable to his case.

Per the six pages of discussion which follow, the Petitioner first shows that the entitlement being preserved is structural in nature, and therefore fully retroactive. Two page discussion. He then shows that the recent Supreme Court decision in United States v. Booker/Fanfan, 125 S.Ct. 738 [2005], Part II, is ex post facto law with respect to his case.

The holding declaring 18 U.S.C. § 3553(b)(1) "unconstitutional" is decidedly violative of the spirit of 28 U.S.C. § 2072(b), if not the letter of the law. Regardless, he does not require any showing of error in the Supreme Court decision in order to preserve the protection of the Sixth Amendment to the sentencing of his case. And the general nature of the explanations made herein permit adoption of one argument to the cases of all defendants on collateral review.

A.    The Principles In <u>United</u> <u>States</u> v. <u>Booker</u>, <u>Part I</u> Demand Retroactive Correction Of Unconstitutional Sentences:

The questions accepted for review in the <u>Jones</u>/<u>Apprendi</u>/<u>Blakely</u>/<u>Booker</u> line of cases were manipulated in order to avoid producing substantive decisions. But in view of the fact that procedural protection is only derived from the substantive justice due the criminal defendant, it is impossible for these decisions not to be pronouncing on the substantive, Constitutional jurisprudence as well. In sum, the substantive conclusion must be that any facts which control the maximum sentence possible are essential elements of the offense of conviction, no matter what they have been called.

Which American can disagree with the principle that when a person is being deprived of his foremost liberty interest, personal freedom, the <u>fundamental</u> reason for the <u>extent</u> of that deprivation <u>must</u> be his <u>conviction</u> for the <u>specific</u> offense. <u>Mullaney</u> v. <u>Wilbur</u>, 421 U.S. 684, 697—98 [1975] (<u>unanimous</u> decision extending the protection of <u>Winship</u> to determinations that go to length of sentence), cited with approval in <u>Monge</u> v. <u>California</u>, 524 U.S. 721, 737 n. 7 [1998].

The procedural nature of the questions being decided tolerated, perhaps, using functional descriptions of the subject matter for the procedural question posed, like it being "the functional equivalent of elements." <u>Blakely</u>, 124 S.Ct. at 2537. But, statements like,

> "Simply put, if the existence of any fact [other than a prior conviction] increases the maximum punishment that may be imposed on a defendant, that fact -no matter how the State labels it - constitutes an element and must be found by a jury beyond a reasonable doubt,"

Sattazahn v. Pennsylvania, 537 U.s. 101, 111 [2003], are obviously unnecessarily obtuse; the facts are elements.

> "[W]hen the term sentencing enhancement is used to describe an increase beyond the maximum authorized statutory sentence [for the conviction alone], it is the functional equivalent of an element of a greater offense than the one covered by the jury's guilty verdict. Indeed, it fits squarely within the usual definition of an "element" of the offense."

Apprendi v. New Jersey, 530 U.S. 466, 486 [2000]. Thus, the Court itself recognized the inherent connection between procedural and substantive jurisprudence demanded from the Constitutional protection required for the circumstance.

In 1992, the Supreme Court had already ruled that the United States Sentencing Guidelines were in fact statutes due solely to their origin.

> "The answer to any suggestion that the statutory character of a specific penalty provision. gives it primacy over administrative sentencing guidelines is that the mandate to apply the Guidelines is itself statutory. See 18 U.S.C. S 3553(b)."

R.L.C.   v.   United states, 503 U.S. 291, 299 [1992].

> "[A] statute is a statute, whatever its label."

R.L.C., 503 U.S. at 305 n. 5.


Thus there is both the Constitutional mandate and the legislative source that make any fact which sets the maximum possible penalty for sentencing an "element" by definition. In Common Law,

> Element is defined "as each component of the actus reus, the causation, the mens rea, any grading factor, and the negative of any defense."

3

<u>Blackstone</u> <u>Law</u> <u>Dictionary</u>, 8th Ed., p. 558, quoting Model Penal Code § 1.13(9).

In statutory offenses, elements which establish the penalty liability define the precise crime. <u>Jones</u> v. <u>United States</u>, for example, held that the different subsections of 18 U.S.C. § 2119 constituted entirely separate offenses. The absence of an express element defining the penalty is fatal to the statute. <u>Evans</u> v. <u>United States</u>, 333 U.S. 483, 486 [1948] (declaring harboring statute a nullity for lack of express penalty element). Open-ended sentencing is, therefore, prevented by the limitation of the verdict.

It would be an incredible fraud for jurists to play word games with the definition of "element" and pretend that the defendant's claims for relief can <u>only</u> be treated as some procedural complaint.

> "When I use a word," Humpty Dumpty said in a rather scornful tone, "it means what I choose it to mean -neither more nor less.
>
> "The question is," said Alice, "whether you can make [element] mean so many different things?
>
> "The question is," said Humpty Dumpty, "which is to be master -that's all."

L. Carroll, <u>Through</u> <u>The</u> <u>Looking</u> <u>Glass</u>. The Supreme Court never truly addressed the justice due defendants once in any of the <u>Booker</u> Opinions. The Court only resolved the issue of judicial power to sentence if the Guidelines were law. But identification of the procedural issues <u>combined</u> with definition of "element" shows that the Government has been convicting defendants for the lesser offense and then unconstitutionally piling on unproved elements at sentencing for the past seventeen years.

When facts are identified as essential elements to the actual crime being sentenced, different legal consequences attach to the treatment of those facts than apply to "mere evidence." <u>Richardson</u>  v.  <u>United States</u>, 526 U.S. 813, 817 (1999).

> "A trial judge is <u>prohibited</u> from entering a judgment of conviction or directing the jury to come forward with such a verdict regardless of how overwhelming the evidence may point in that direction."

<u>United States</u> v. <u>Martin Linen Supply Co.</u>, 430 U.S. 564, 572—73 [1977]. Sentencing courts were exceeding their authority when they preponderance—sentenced for acquitted conduct, dismissed conduct, relevant conduct, obstruction, firearms, leadership, and so on.

The <u>Apprendi/Blakely/Booker</u> decisions address the legal issues at the level of effect, but not the cause. The analysis performed, however, forces the absolute definition of certain sentencing facts as "elements," making the complaint substantive and the procedural protection structural.

> "Application of the due process principles of [<u>Booker</u>, Part I/R.L.C.] may make a retroactivity analysis unnecessary. [ ] The question here is not just one of retroactivity. Rather, retroactivity is not at issue if the [Supreme Court's] interpretation of [guideline maximum being the legal equal to statutory maximum for due process purposes] is a correct statement of the law."

<u>Bunkley</u> v. <u>Florida</u>, 538 U.S. 835, 840 [2003] [translating <u>Bunkley's</u> "length of knife blade" holding to the substantive definition of "element" in the Federal Sentencing Guidelines holding in <u>Booker</u>).

Legally, the proof of elements to a jury is the inherent <u>duty</u> of the Government before obtaining a conviction; the standard of proof is <u>enforced</u> by the Courts themselves, who obviously no longer can be the judger of facts. The change in procedure demanded by <u>Booker</u>, Part I, is structural! The jurisdiction to sentence for elements requires that <u>trial</u>, not an

evidentiary hearing, be

> "The prime instrument for reducing the risk of convictions resting on factual error. The [trial] standard provides concrete substance for the presumption of innocence that 'bedrock and elementary' principle whose 'enforcement lies at the foundation of the administration of justice in the criminal .' "

In re Matter of Winship, 397 U.S. 358, 364 [1970] (citation omitted). The point is that the standard of proof is inherent to the process of determining element-facts; it is never the defendant's to dictate or waive, or passively acquiesce.

> "The prosecution's burden of proof to the jury of every element beyond a reasonable doubt is not lifted by a defendant's tactical decision not to contest an element of the offense."

Estelle v. McGuire, 502 U.S. 62, 72 [1991].

Without satisfaction of the Constitutional burden of proof of essential elements, no Court can claim jurisdiction to sentence for those unproven facts. Mullaney v. Wilbur, supra. The Winship Doctrine, which "establish[ed] so fundamental a substantive constitutional standard," must also require that the factfinder will rationally apply that standard to the facts in evidence." Jackson v. Virginia, 443 U.S. 307, 317 [1979]. It is therefore unconstitutional to enlarge the scope of guilt beyond the verdict.

The protection that the accused can be secure in the fundamental rules of the forum is both entirely separate and entirely equal Due Process entitlements of the defendant to the one that the trial will be conducted free of constitutional errors to a "harmless error" standard. Arizona v. Fulminate, 499 U.s. 279, 307 [1991] ("Structural defects in the constitution of the trial mechanism" are in the "limited class of constitutional errors that 'defy analysis by harmless error'" and "so. intrinsically harmful as to require automatic reversal.") The structural error of holding a defendant guilty for unproved element-facts nullifies the whole trial principle and demands automatic reversal for that reason alone. Rose v. Clark, 478 U.S. 570, 576 [1986]

6

(listing seven procedural errors designated as reversible <u>per</u> <u>se</u> for structural error). Not bothering to prove elements aggravating the charged offense, if anything, is an order of magnitude greater constitutional error in nature than those already acknowledged. <u>Ibid</u>.

> "[The question] is not whether guilt may be spelt out of a. record, but whether guilt has been found by a jury to the procedures and standards [required by the Constitution]."

<u>Bollenbach</u> v. <u>United</u> <u>States</u>, 326 U.S. 607, 614 [1946].

The identification of substantive (definitional) errors and structural errors have always been legal events triggering the availability of retroactive collateral review. <u>Davis</u> v. <u>United</u> <u>States</u>, 417 U.s. 333, 341-47 [1972]. The <u>Jones/Apprendi/Blakely/ Booker</u> clarification that sentencing facts which increase the maximum statutory or guideline sentence imposable, is a substantive interpretation changing the prior law of sentencing as practiced. It satisfies the showing of cause by just being the error.

B.  The Booker/Fanfan Decision Is Ex Post Facto To This Petitioner In All Its Negative Aspects:

The relief portion of the Booker/Fanfan decision admits of two means to purportedly alleviate the Sixth Amendment unconstitutionality of applying the United States Sentencing Guidelines to criminal sentencings.  United States v. Booker/Fanfan, 125 S.Ct. _ _ [2005]. Justice Breyer rejects the first alternate, i.e., to require that the Guideline facts be proved beyond a reasonable doubt, as contrary to the intent of Congress. Id. at  He therefore chooses the second alternate, to declare 18 U.S.C. S 3553(b)(l) and 18 U.S.C.. S 3742(e) unconstitutional to the extent that they have made Guideline sentencing mandatory.

The problem for this approach is that it is ex post facto for altering the Blakely-clarified "rules of evidence, and receiv[ing] less evidence [ ... ] than the law required at the time of the commission of the offense, in order to convict the offender." Calder   v.    Bull, 3 Dall. 386, 390, 1 L.Ed. 648 [1798]. Regardless of "labels," it is now legally estalbished that the sentencing facts beyond the conviction simpliciter are further elements of an aggravated offense wherever they increase a penalty. Blakely v. Washington, 124 S.Ct. 2531, 2537 [2004]. As such, they were never to .be proved only to a preponderance standard to a judge; instead, sentencing facts were to receive the full constitutional protection of elements. Richardson v. United States, 526 U.S. 813, 817 [1999] (different legal consequences attach to facts which are "elements" as compared to facts which are "mere evidence".); Mullaney v. Wilbur, 421 U.S. 684, 697-98 [1970] (unanimous holding extending the protection of Winship to facts which go to determination of length of  sentence), cited in Monge v. California, 524 U.S. 721, 737 n. 7 [1998].

There is nothing that inherently prevented Congress from enacting a sentencing scheme which provided defendants with Sixth Amendment protection for sentencing facts in general. Now we have learned, after years of misuse, that this is exactly what Congress did do. Blakely v. Washington, supra. But if the error was for Congress to give away more than it intended by its choice of making the Sentencing Guidelines mandatory, that was not a "mistake" in the sense of being prohibited by some Constitutional principle. It was simply a mistake of translating

Congressional intent into exact law that absolutely effected that intent. This type of error does not entitle either Congress or the Supreme Court to take away anything that had been genuinely enacted.

Congress frequently blithers a law and finds itself bound by unforeseen and unintended consequences. E.g., Deal v. United States, 508 U.S. 129 [1993] (finding fifteen years after enactment that 18 U.S.C. § 924(c) predicate conviction can be in case being adjudicated for purposes of second and subsequent § 924(c) counts and requiring Mr. Deal to be sentenced to 105 years). In reaching conclusions like that in Deal, the Supreme Court has consistently held that a law means what it says. Deal, supra; Salinas v. United States, 522 U.S. 52, 57 [1994] (first duty of reviewing court is to analyze the plain language of the statute and enforce its plain meaning unless it is identified as unconstitutional to do so). The statutes do not become unconstitutional for not satisfying the intent of Congress. "An act of the legislature" must be "repugnant to the Constitution" in order to be void. Marbury v. Madison, 1 Cranch 137, 177 [1803].

> "Statutes should be construed to avoid constitutional questions, but this interpretative canon is not a license for the judiciary to rewrite language enacted by the legislature."

United States v. Albertini, 472 U.S. 675, 680 [1985], quoted in Salinas, supra, 522 U.S. at 59-60.

Justide Breyer admits that he did not have to declare 18 U.S.C. § 3553(b)(1) unconstitutional in order to solve the application of Guidelines problem. Booker/Fanfan, 125 S.Ct. at Choosing the intent of Congress is no legitimate alternative unless compelled by a defect of Constitutional dimension.

In his decision, Justice Breyer fails to address, let alone demonstrate, any compulsion of Constitutional magnitude to warrant deviating from the mandate inherent in having created the Sentencing Guidelines as law.   R.L.C. v. United States, 503 U.S. 291, 299 [1992] (the federal sentencing guidelines are statutory because the command to use them is both

mandatory and statutory).

> "[O]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from [statutory] language."

Albertini, supra, 472 U.S. at 680, quoting Garcia v. United States,  469 U.S. 70, 75 [1984]; Ardestani v. I.N.S., 502 U.S. 129, 135 [1991] (courts may deviate from the plain language of a statute only in "rare and exceptional circumstances"). In the present circumstance, it would be directionally violative of the rule of lenity to read out for the statutory scheme the plain constitutional protection owed a defendant for the sake of a non-executed intent of Congress. Kolender v. Lawson, 461 U.S. 352, (1983). It is violative of Constitutional Due Process for the Court to, in effect, repeal a Constitutional protection with ex post facto effect.  See Bouie v. City of Columbia, 378 U.S. 347, 354 (1964) (Ex Post Facto Clause is enforsable on the courts through the Due Process Clause of the Fifth Amendment).

Regardless, for the whole time that the Sentencing Guidelines were intact, their Constitutional protections were self-executing. The Constitution enforces itself. City of Boerne v. Flores, 521 U.S. 507, [1991] (the first eight Amendments of the Federal Constitution set forth self-executing prohibitions on governmental actions). This being so, it is all the defendants whose offenses occurred between November 1, 1987 and January 12, 2005 who are protected and it is the new defendants since January 12 who are out in the unconstitutional cold. Weaver v. Graham, 450 U.S. 24, 28—29 [1981] (The ex post facto clause requires that legislative enactments "permit individuals to rely on their meaning until explicitly changed.").

While Justice Breyer's "construction is valid f or the future, it may not be applied retroactively, any more than a legislative enactment may be, to impose criminal penalties for conduct committed at a time when it was not fairly [proven] to be criminal." Literating Bouie,

378 U.S. at 362, to the evidence prong of the ex post facto clause. This sentence must be vacated and the defendant resentenced without enhancements above the offense of conviction.

C.   The Controled Substance Act is Unconstitutional.


In <u>United States</u> v. <u>Booker</u>, if the Supreme Court were merely <u>choosing</u> a remedy rather than pronouncing <u>the</u> remedy dictated by the Rule of Law, the Court would be legislating like Congress, not interpreting the law. The intent of Congress has been made paramount. So, if <u>Booker</u> is sound jurisprudence, that decision now requires that Courts must enforce the intent of Congress above all other prudential doctrines in deciding a case. If the intent of Congress is plain, that intent must be given effect, unless it is unconstitutional to do so. And, as in <u>Booker</u>, if the law is unconstitutional to enforce per the intent of Congress, it must be struck down.


On the occasion of the <u>Apprendi</u> decision, many litigants argued that 21. U.S.C. § 841 was facially unconstitutional because Congress had enacted all the penalties only as "sentencing factors for a judge to determine instead of as "elements." The judicial fix to restore constitutionality was for all the Courts of Appeal to declare the drug identity and drug quantity factors to be elements. Post—<u>Booker</u>, this fix is <u>per se</u> unconstitutional because the Courts lacked the authority to change the intent of Congress. Title 21 U.S.C. § 841 <u>is</u> facially void for all the reasons argued by those 10,000 <u>Apprendi</u>-decision litigants to the same certainty as the 10,000 Court of Appeals decisions holding § 841(b) to be listing "sentencing factors."

CONCLUSION

The Petitioner continues to await the issuance of a show cause order in the above § 2255 case. Accordingly, the foregoing Supplement should be filed pursuant to Federal Rule of Civil Procedure 15(a), where the Government has not yet answered. The Supplement does not add arguments to the Petition; rather, it states what Mr. Vasquez argues is the correct standard of review for the arguments that have been presented as his grounds for relief.

Wherefore, Mr. Vasquez prays that the foregoing arguments will be accepted for filing and that the Government will be ordered to answer.

Respectfully submitted,

Puggi Vasquez, Pro Se
F.C.I.      Fort Dix, Unit 5751
P.O. Box 2000
Fort Dix, New Jersey 08640-0902

13

## OATH

I, Puggi Vasquez attest that the foregoing Supplement to the FEDERAL HABEAS CORPUS motion is true and correct, under the penalty of perjury, to the best of my knowledge.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT, a true and correct copy of the foregoing Supplement to the FEDERAL HABEAS CORPUS motion was forwarded, via U.S MAIL, to THE U.S ATTORNEY'S OFFICE, U.S Courthouse, *595* MAN St., WORCESTER, MA. 01608 on this  *11*  day of APRIL,2005.

Respectfully submitted,

Puggi Vasquez

**propia persona**