UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PUGGI VASQUEZ,                      )
          Petitioner               )
                                   )    CIVIL ACTION
          v.                       )    NO. 04-40205-NMG
                                   )
UNITED STATES OF AMERICA,          )
          Respondent               )
                                   )

## Government's Memorandum In Opposition To
## Petitioner's Motion Under 28 U.S.C. §2255

### INTRODUCTION

The United States of America, by Michael J. Sullivan, United
States Attorney, and David Hennessy, Assistant U.S. Attorney, for
the District of Massachusetts, hereby files this memorandum in
opposition to the petitioner's motion under 28 U.S.C. §2255. Puggi
Vasquez ("Vasquez") has filed a petition seeking to vacate or set
aside his sentence on the following grounds: (1) that his attorney
was constitutionally ineffective in his advocacy against Vasquez
being held accountable for narcotics seized during the conspiracy;
(2) that his counsel was constitutionally ineffective in his
advocacy against an adjustment for obstruction of justice, and for
acceptance of responsibility credit; and (3) that his sentence was
unconstitutionally enhanced based on findings of fact that were not
proved to a jury beyond a reasonable doubt.  Because Vasquez's
claims are meritless, and because the claims of ineffective
assistance of counsel appear to be a pretext to re-litigate the
Sentencing Guidelines, the petition should be dismissed.

## **FACTS AND PRIOR PROCEEDINGS**

Vasquez was charged in an indictment, with six others, with one count of conspiring to possess with intent to distribute cocaine base, cocaine and heroin, in violation of 21 U.S.C. §846; and with two counts of distributing cocaine, in violation of 21 U.S.C. §841(a)(1); and aiding and abetting the same, in violation of 18 U.S.C. §2. See PSR ¶¶ A-C.[1] The conspiracy count alleged that the conspiracy involved more than 50 grams of cocaine base. Id. ¶D. On May 19, 2000, Vasquez pleaded guilty to each of the charges against him, pursuant to a plea/cooperation agreement with the government. [D.117]; Plea Agr. In pertinent part, the parties agreed that Vasquez was accountable for the equivalent of 700 to 1,000 kilograms of marijuana (which corresponds to a base offense level ("BOL") of 30), that Vasquez qualified for a minor role adjustment, and was safety-valve eligible upon satisfaction of the criteria for that adjustment. See Plea Agr. ¶ 3.

At the time of Vasquez's guilty plea, the government took the unusual step of moving that Vasquez be permitted to remain on pretrial release. After Vasquez's plea, the Court granted the government's motion for Vasquez to remain at liberty. [D. 117].

---

[1]Citations are as follows: "[D._]" refers to a docket entry, "[Pet.]" refers to the defendant's original 2255 petition. The Plea Agreement ("Plea Agr.") is part of the PSR. The government annexes hereto, for the convenience of the Court, the Plea Agreement, Exhibit A, transcript of the sentencing hearing ("[Sn. Hg.]"), Exhibit B, and Appellate Docket, Exhibit C.

2

In late August 2000, Vasquez became a fugitive. PSR ¶H. He fled to the Dominican Republic where he remained for approximately 18 months.   Pet. Aff. ¶¶ 12-13.   After a year, his attorney attempted to negotiate Vasquez's return and to preserve the benefits of the cooperation agreement, such as a potential Section 5K1 motion.   See Sn.Hg. 6-8.

Vasquez did not return to the U.S. until January 22, 2002. The U.S. Marshal Service was notified that Vasquez would return on that date, and Vasquez was arrested upon his return.   PSR ¶H1; Sn.Hg. 6.   Vasquez's bail was revoked.   PSR ¶H1.

The Sentencing Hearing was held on March 27, 2002.  Sn.Hg. 1. Drug weight, minor role and safety-valve having been agreed upon in the Plea Agreement, the issues at sentencing were whether Vasquez's flight warranted an upward adjustment for obstruction of justice and a denial of credit for acceptance of responsibility.  Id. 3. Vasquez's Counsel filed a sentencing memorandum explaining why the case was extraordinary and why, given the extraordinary circumstances of the case, Vasquez should not receive an obstruction of justice enhancement, and should receive an adjustment for acceptance of responsibility.  Id.; [D.173].

At the Sentencing Hearing, Vasquez's Counsel presented a detailed argument in support of Vasquez's position.  Among other things, Counsel argued that:

-Vasquez became part of the conspiracy as a result of a break-up in a personal relationship and the development of a

3

relationship with two of the co-defendants, Alvarado and her
husband;

-following his arrest, Vasquez took responsibility for
participating in the conspiracy and immediately began to
cooperate, providing information about the conspiracy;

-Vasquez was released on bail and was largely compliant with
the conditions of release;

-Vasquez cooperated pro-actively with the DEA in another
investigation;

-in Summer 2000, Vasquez breached the conditions of his
release, a fact Vasquez fully conceded and took responsibility
for;

-Vasquez was confronted at his job by DEA agents about
breaching the conditions of his release, became afraid that
his identity as a cooperator might become known, and fled;

-over a year later, Vasquez contacted his attorney because he
wanted to face sentencing on this case;

-Counsel then worked with the government and ultimately
arranged for Vasquez to return to New York voluntarily to
surrender, that Vasquez did not want to go to Miami because
the defendants had gone there;

-Vasquez undertook to return to the U.S. voluntarily, at
little or no expense to the government;

-the desire to be re-united with family and to bring closure
to the criminal charges precipitated Vasquez's return; and

- Vasquez remained available to conclude his cooperation as a
potential witness in cases Vasquez helped the DEA make.

See Sn. Hg. 3-8.

The government argued that Vasquez fled not out of fear that

his status as a cooperator might be disclosed- he never mentioned

concerns for his safety to DEA agents - but because he saw his

Section 5K1 motion in jeopardy based on his violation of the

4

conditions of release by working in Massachusetts under a false name. The government noted that its motion following the Vasquez's guilty plea for release on conditions was rare and extraordinary. Hence, the government argued, Vasquez obstructed justice, and jeopardized credit for acceptance of responsibility. Sn. Hg. 8-11. The Court agreed with the government. It stated:

> I don't think there is any more clear demonstration of an obstruction than what this defendant did when he left the country after already having violated his conditions of release, which is not only unusual for the government to ask for, but very unusual, as counsel know from this session of the district court, to allow.
>
> \* \* \*
>
> So this is clearly a case which warrants an obstruction of justice add-on; and for the same reasons, he is not entitled to a three-level reduction for acceptance of responsibility.

Sn.Hg. 11-12.

The Court then determined the GSR. It found that the BOL was 30; that Vasquez was entitled to a minor role adjustment, and a two-level reduction for safety-valve, a two level enhancement for obstruction and no acceptance of responsibility credit. Thus the GSR was 78 to 97 months. Id. 12-14.

The government opposed the low end of the GSR. Id. at 14. Vasquez's Counsel argued for the bottom of the GSR, noting that Vasquez had no countable criminal history, that some of Vasquez's co-defendants had received sentences below 78 months, that Vasquez's participation in the conspiracy was minimal, and that even after fleeing, Vasquez agreed to return voluntarily, "well-

5

aware ... that anything could happen with him and his case." Id. at 16-18. Although the Court did not sentence Vasquez to the bottom of the GSR, it obviously considered the arguments of Vasquez's Counsel carefully, and imposed a jail term in the middle of the GSR, of 87 months.

On appeal, Vasquez challenged this Court's enhancement for obstruction of justice enhancement and denial of acceptance of responsibility credit, and its finding that the case was not "extraordinary" which would have permitted Vasquez to receive acceptance of responsibility credit, notwithstanding conduct constituting obstruction of justice. On July 10, 2003, the First Circuit affirmed. United States v. Vasquez, 02-1559, (Exhibit C).

On October 12, 2004, Vasquez filed a memorandum of law pursuant to 28 U.S.C. §2255 to vacate or set aside his sentence. He filed a supplemental pleading in April 2005.[2]

## ARGUMENT

## I.   VASQUEZ HAS FAILED TO ESTABLISH THAT HIS ATTORNEY WAS CONSTITUTIONALLY INEFFECTIVE

Vasquez claims that he was denied effective assistance of

---

[2]It is a close call whether Vasquez's 2255 Petition is timely under the requirement that he file within one year of the judgment becoming final. Vasquez filed on October 12, 2004, which is a few days past the one-year deadline; however, pro se prisoners can probably take advantage of the so-called "prison mailbox" rule of Houston v. Lack, 487 U.S. 266(1988), under which the motion is deemed filed when delivered into the prison mail system, regardless of when it is received by the District Court. Accordingly, the government does not attack the Petition as untimely.

counsel (1) when his attorney failed to present and argue facts which Vasquez now suggests show he is accountable for a smaller quantity of narcotics than found by the Court; and (2) when his attorney failed to present and argue facts which, he claims, would defeat an adjustment for obstructing justice and support an adjustment for acceptance of responsibility. These claims are without merit.

## 1. Legal Principles

In Strickland v. Washington, 466 U.S. 668 (1984), the Court, in reaffirming that the Sixth Amendment guarantees a criminal defendant "effective" assistance of counsel, said, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id. at 686. The Court formulated a two-prong test for evaluating counsel's performance. To establish a violation of the Sixth Amendment, a defendant must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant, resulting in an unreliable or fundamentally unfair outcome of the proceeding. Id. at 687. In considering such a claim "counsel is *strongly presumed* to have rendered adequate assistance and made all significant decisions in the exercise of reasonably professional judgment." Id. at 690 (emphasis added). While a defendant must

7

prove both prongs, id. at 687, Vasquez can establish neither.

## 2. Counsel's performance exceeded objective standard

In this case, Counsel's performance met, if not exceeded, an objective standard of reasonableness. The record shows that Counsel was diligent in protecting Vasquez's rights, and was fully focused on reducing Vasquez's potential jail exposure. Among other things, Counsel negotiated a plea agreement with the government that permitted Vasquez to earn Section 5K1 departure motion.  In the plea agreement, Counsel obtained the government's agreement to a minor role adjustment and, should Vasquez meet the criteria, an adjustment for safety valve. See PSR, Plea Agreement, ¶¶ 3 and 4. Indeed, it is hardly surprising that in the Plea Agreement, just above his signature, Vasquez stated: "I am satisfied with the legal representation provided to me by my attorney." See Plea Agr. 9.

But Counsel's vigorous representation of Vasquez continued after that. When Vasquez absconded, Counsel attempted to negotiate Vasquez's surrender to the government and the preservation of the agreement to move for a Section 5K1 departure, notwithstanding Vasquez's flight. See Pet. p.12; Sn.Hg. p.6, 8. At the sentencing hearing, Counsel argued zealously for acceptance of responsibility credit and against an adjustment for obstruction. See Sn.Hg. pp. 3-8. Indeed, contrary to Vasquez's suggestion in his Petition that there was a deficit in Counsel's presentation, five pages of transcript – nearly 25% of the entire hearing – reports his

8

attorney's efforts to persuade the Court to credit Vasquez with acceptance of responsibility and not assess Vasquez an upward adjustment for obstruction.  Id.  While the Court ultimately rejected these arguments, the record shows that it was not because of Counsel's failings in advocacy, but because Vasquez's flight was simply overwhelming evidence that he did not accept responsibility for his crimes and had obstructed the administration of justice. The Court noted:

> I don't think there is any more clear demonstration of an obstruction than what this defendant did when he left the country after already having violated his conditions of release, which is not only unusual for the government to ask for, but very unusual, as counsel know from this session of the district court, to allow
>
> I am always reluctant to let someone who has been convicted or plead guilty to a serious crime – in this case, very serious drug offense – to allow someone to be released in the custody of a drug enforcement agent or anyone else, and I do it very reluctantly.  And this incident inclines me to do it less frequently rather than more frequently.  If anything, Mr. Vasquez has hurt the cause of other defendants that would have been allowed to do the same thing because of the kind of conduct that he displayed.
>
> So this is clearly a case which warrants an obstruction of justice add-on; and for the same reasons, he is not entitled to a three-level reduction for acceptance of responsibility.

Sn.Hg. pp. 11-12.

Undeterred, Counsel persisted in his advocacy for Vasquez. Upon determining that the GSR was 78 to 97 months, Counsel made a compelling argument, comprising three pages of transcript, for the bottom of the GSR, which persuaded the Court not to impose the

9

high-end. The Court sentenced Vasquez to 87 months, the middle of the GSR. Id. pp. 16-18; 20.

Despite Counsel's vigorous advocacy for Vasquez at every step of the proceedings, Vasquez now complains that Counsel was ineffective, first, in failing to argue facts – such as Vasquez's personal circumstances or the circumstances which allegedly led to Vasquez's participation in the conspiracy – that, Vasquez now posits, would show he was not accountable for the drugs seized during the conspiracy. This complaint fails to meet the first prong of Strickland. First, there were no unprofessional errors by Counsel in this regard because, as shown above, Vasquez's attorney presented the Court with information regarding the circumstances surrounding Vasquez's entry into and participation in the conspiracy. See Sn. Hg. 3-4. Second, to the extent Vasquez's Counsel did not elaborate on these matters to the same degree as Vasquez does in his Petition, such differences of degree do not constitute ineffective assistance of Counsel; circumstances such as the break-up with a girlfriend and chance acquaintance with the coconspirators are simply not relevant to Vasquez's accountability for the weight of particular drugs. Rather, accountability is determined according to U.S.S.G. §1B1.3(a)(1)(B) ("in the case of jointly undertaken criminal activity . . . all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity."). Third, an attempt by Counsel to contest

10

relevant conduct with such peripheral matters would have been contrary to the Plea Agreement Vasquez signed which provided: "the parties agree that the Defendant is responsible for the equivalent of 700 to 1,000 kilograms of marijuana." See Plea Agr. ¶3(A). In fact, a contrary claim could have jeopardized concessions Counsel had obtained from the government in the plea/cooperation agreement, such as acceptance of responsibility credit. See Plea Agr. ¶3 (U.S. Attorney will not recommend reduction for acceptance if defendant falsely denies or frivolously contests relevant conduct for which he is accountable).

Vasquez's other attack on Counsel' performance – shortcomings in opposing an adjustment for obstruction and advocating for acceptance of responsibility credit – fares no better under Strickland. First, Vasquez's Counsel argued in substance precisely what Vasquez presents in his Petition. For instance, Counsel told the Court that Vasquez was a pro-active cooperator whose assistance led to pending indictments and that Vasquez might be required to testify in connection with those indictments, see Sn.Hg. pp 7-8; that Vasquez's fear of being identified as a cooperator and informant precipitated his flight, Id. pp. 5-6; that Vasquez regretted his decision to flee, Id.; and that his family and an obligation to accept responsibility precipitated his decision to return and self-surrender. Id. p.7. As noted above, the record makes abundantly clear that it was not the quality of Counsel's

11

advocacy, but rather the inescapable and overwhelming fact that Vasquez breached his duty and the trust placed in him when he fled to the Dominican Republic that determined the Court's decision to apply an obstruction of justice enhancement and deny acceptance of responsibility credit. Indeed, an honest assessment of Vasquez's attorney's efforts and the relief sought in this Petition, strongly suggests that Vasquez's attack on Counsel's performance appears to be nothing more than a pretext to re-litigate his sentence.

## 3.  Vasquez cannot show prejudice

Even if there was some lapse in Counsel's arguments or advice – and there was not – Vasquez nevertheless cannot establish that he suffered Strickland prejudice as a result.

Recognizing in Strickland that attorney errors are "as likely to be utterly harmless in a particular case as they are to be prejudicial," the Court held that to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693, 694; United States v. Ortiz, 23 F.3d 21, 26 (1st Cir. 1994). In the context of a guilty plea, a defendant can show prejudice by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pleaded and would have insisted on trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). This Vasquez has completely failed to do.

12

Indeed, the relief sought in his Petition is to be re-sentenced in light of the arguments he makes therein, not to go to trial.

Second, it is hard to see how Vasquez was prejudiced by whatever failure he can find in Counsel's performance. With respect to accountability for drug type and weight, the fact is, Vasquez signed a Plea Agreement in which he agreed to a drug weight that set the BOL applied by the Court. Counsel's arguments for holding Vasquez accountable for less would have been squarely at odds with the Plea/Cooperation Agreement. Indeed, at sentencing, Vasquez neither contested nor sought to amend the PSR insofar as it held Vasquez accountable for certain drugs and drug weight.

Similarly, Vasquez can show no prejudice from the claim that his attorney was not effective in this arguing against an obstruction of justice enhancement and for acceptance of responsibility credit. It is settled that flight while on release warrants the denial of credit for acceptance of responsibility and an assessment for obstruction of justice. The plain language of the Sentencing Guidelines provides that an adjustment for obstruction of justice applies to "escaping . . . before . . . sentencing; or willfully failing to appear, as ordered." See also United States v. Yeo, 936 F.2d 628, 629 (1ˢᵗ Cir. 1991)(flight before sentencing warranted obstruction of justice increase). Indeed, the Guidelines provide for giving credit for acceptance of responsibility to a defendant who obstructs justice only in

13

"extraordinary" cases, see U.S.S.G. 3E1.1 application note 4, and, as this Court found, notwithstanding Vasquez's attorney's advocacy, this was not such a case.

Moreover, the Plea Agreement which Vasquez read and signed expressly provided that the U.S. Attorney would not recommend a reduction for acceptance if Vasquez "violates any condition of release." It further provided that the government reserved the right not to seek a departure motion "if Defendant violates any condition of his pretrial release." Hence, the outcome of the sentencing hearing was not the product of unprofessional errors by Counsel, but of Vasquez's flight.

In the end, Vasquez cannot make either of the requisite Strickland showings, and his attack on the performance of Counsel is without merit.

## II. **Booker is not retroactively applicable to Vasquez's case, because his judgment became final before Booker's decision was announced.**

Vasquez argues that he should be resentenced pursuant to the Supreme Court's recent decision in Booker, which held that unless the federal Sentencing Guidelines are applied on an advisory basis, they are subject to the Sixth Amendment's requirements of a jury trial. United States v. Booker, 125 S.Ct. 738, 769 (2005). The new rule in Booker made it unconstitutional to apply the Guidelines on a mandatory basis, using facts not proved to a jury. Id. Vasquez argues that since his sentence was enhanced under the

14

Guidelines based on facts not found by the jury or admitted by him, he should be entitled to collateral relief.

Vasquez, however, may not seek resentencing based on a Booker error, because Booker is not retroactively applicable to collateral challenges such as his. First, in Booker, the Court stated that it was applying Booker's holding "to all cases on direct review" as of the date of the decision, January 12, 2005. Id. Vasquez's case was not pending direct review when Booker was decided on January 12, 2005. The First Circuit affirmed his conviction on July 10, 2003 and Vasquez did not file a petition for a writ of certiorari; thus, the judgment became final 90 days after entry of the Court of Appeals' judgment, on October 10, 2003. See Clay v. United States, 537 U.S. 522, 525 (2003) ("[A] judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmation of the conviction."). Since Booker is not retroactively applicable to cases that became final before January 12, 2005, and Vasquez's judgment became final in October 2003, Vasquez cannot seek resentencing under Booker's new rule.

Second, new constitutional rules of criminal procedure are generally not retroactively applicable to cases that became final before the decision was announced. Teague v. Lane, 489 U.S. 288, 316 (1989) (plurality opinion). Under Teague, the Supreme Court allows for only two exceptions to the general bar on retroactive

15

application: (1) a new substantive rule that alters the range of
conduct or the class of persons that the law punishes; and (2) one
of the rare "watershed rules of criminal procedure implicating the
fundamental fairness and accuracy of the criminal proceeding."
Schriro v. Summerlin, 124 S.Ct. 2519, 2520 (2004) (internal
quotations omitted); Teague, 489 U.S. at 311.  "That a new
procedural rule is 'fundamental' in some abstract way is not
enough; the rule must be one without which the likelihood of an
accurate conviction is *seriously* diminished." Summerlin, 124 S.Ct.
at 2523 (internal quotations, citations omitted).  Booker fits
neither exception.

     In the analogous decision of Summerlin, the Supreme Court held
that its decision in Ring v. Arizona, 536 U.S. 584 (2002)
constituted a new procedural rule that did not apply retroactively
to cases already final on direct review.  Summerlin, 124 S.Ct. at
2526.  In Ring, the Court had applied the Apprendi rule to a death
sentence.  Id. at 2522; see Apprendi v. New Jersey, 530 U.S. 466,
490 (2000) ("Other than the fact of a prior conviction, any fact
that increases the penalty for a crime beyond the prescribed
statutory maximum must be submitted to a jury, and proved beyond a
reasonable doubt.").  The Summerlin Court determined that the new
rule in Ring was procedural, rather than substantive: "Ring altered
the range of permissible methods for determining whether a
defendant's conduct is punishable [in a particular way], requiring

16

that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decision making authority in this fashion are prototypical procedural rules." Summerlin, 124 S.Ct. at 2523. Thus, the first Teague exception did not apply to Ring. The Court found that the second Teague exception did not apply because judicial factfinding, while arguably less accurate than a jury, does not "so seriously diminish[] accuracy that there is an impermissibly large risk of punishing conduct the law does not reach." Id. at 2525 (internal quotations omitted). Therefore, it was not part of the "extremely narrow" class of watershed rules that would allow for an exception. Id. at 2523. Accordingly, the Supreme Court held that the rule in Ring could not apply retroactively to cases already final on direct review. Id. at 2526.

Similarly, the First Circuit has held that "the Apprendi rule has no retroactive application to cases in which the judgment of conviction became final before Apprendi was decided." Sepulveda v. United States, 330 F.3d 55, 66 (1st Cir. 2003). The court in Sepulveda found that the first Teague exception did not apply to the Apprendi rule because it "neither places any particular type of conduct beyond the reach of the criminal law nor pretermits any particular type of punishment for a specific class of defendants." Id. at 59. It found that the Apprendi rule did not fall into the second Teague exception because, as a rule pertaining to

17

sentencing, infringement of its rule could not "seriously diminish the accuracy of convictions (which, by definition, must take place before any such infringement occurs)." Id. at 60. Emphasizing that "[w]atershed rules affecting bedrock procedural elements are few and far between," the Sepulveda court found that "Apprendi is not within this small core of cases." Id. at 61. Therefore, it held, "without serious question, that Apprendi prescribes a new rule of criminal procedure, and that Teague does not permit inferior federal courts to apply the Apprendi rule retroactively to cases on collateral review." Id. at 63.

In Booker, the Supreme Court applied the Apprendi rule to the federal Sentencing Guidelines. Booker, 125 S.Ct. at 747-48. Like Ring, which applied the Apprendi rule to a death sentence, and Apprendi itself, Booker should be considered a new procedural rule that is not retroactively applicable to cases on collateral review. By requiring that the Guidelines be applied on an advisory basis to enhance a defendant's sentence, Booker "altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way]," Summerlin, 124 S.Ct. at 2523. As the Supreme Court stated in Summerlin, "[r]ules that allocate decision making authority in this fashion are prototypically procedural rules." Id.

Furthermore, like sentence enhancements based on judicial factfinding, sentence enhancements based on mandatory Sentencing

18

Guidelines do not seriously diminish the accuracy of convictions. As the First Circuit recently stated, "[t]he guidelines remain a central consideration in sentencing; and sentencing courts must still consider the same statutory factors that the Sentencing Commission was required to use in promulgating the guidelines. To describe the use of mandatory guidelines as generating serious inaccuracy or fundamental unfairness would not be easy." Cirilo-Muñoz, 404 F.3d at 533; see also McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005), cert. denied, 2005 WL 1105026 ("As a practical matter, . . . sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a 'watershed' change that fundamentally improves the accuracy of the criminal process."). Like Ring and Apprendi, Booker is a procedural rule that does not fit into the extremely narrow class of "watershed" rules.

Thus, Booker should not be retroactively applicable to cases already final on direct review. Indeed, "[e]very other circuit that has considered this issue has agreed that Booker does not apply retroactively." Cirillo-Muñoz, 404 F.3d at 533; citing Varela v. United States, 400 F.3d 864, 866-68 (11th Cir. 2005); Humphress v. United States, 398 F.3d 855, 860-63 (6th Cir. 2005); McReynolds, 397 F.3d at 480-81; United States v. Mitchell, 122 Fed.Appx. 539, 540 (2d Cir. 2005) (unpublished); United States v.

19

Leonard, 120 Fed.Appx. 759, 761 (10th Cir. 2005) (unpublished).
Consistent with Supreme Court and Circuit Court precedent, Booker
should not be retroactively applied to Vasquez's collateral
challenge.

## B. Vasquez's objections to his sentence were not preserved, and he has not shown "cause" or "actual prejudice."

Assuming *arguendo* that Booker can be retroactively applied to
collateral challenges, Vasquez's case does not warrant
resentencing. Vasquez concedes that he failed to raise a Sixth
Amendment challenge to the application of the Guidelines to his
case; accordingly, he may pursue his Booker claim only if he can
show both "cause" for his failure to raise the issue at his
sentencing hearing and on direct appeal, and "actual prejudice"
resulting from the Booker error. See Bousley v. United States, 523
U.S. 614, 622 (1998); United States v. Frady, 456 U.S. 152, 170
(1982). Since Vasquez's claim does meet these requirements, it
cannot give rise to collateral relief.

## 1. Vasquez cannot show cause to excuse his procedural default

Vasquez argues that given the controlling law in the First
Circuit at the time of his sentencing, the failure to raise his
Booker claim should be excused. See Pet. 17-18. This argument,
however, is insufficient to establish "cause" for failing to raise
the Sixth Amendment issue at trial or on appeal. "The inquiry into
the applicability of the procedural default rule is, for the most

20

part, black or white: either the defendant proffered a timely objection or he did not. While there are a few exceptions, the subsequent announcement of a Supreme Court ruling – whether or not it blazes new trails – is not one of them." Derman v. United States, 298 F.3d 34, 44 (1st Cir.) (internal citation omitted), cert denied, 537 U.S. 1048 (2002). Unless the claim is "so novel that its legal basis is not reasonably available to counsel," the claim's novelty does not establish cause for the defendant's procedural default. Bousley, 523 U.S. at 622.

When the defendant was sentenced in March 2002, the legal landscape surely provided a basis for Sixth Amendment challenges to the Sentencing Guidelines. The caselaw suggests as much. See e.g., Apprendi, 530 U.S. at 494 ("[T]he relevant inquiry is not one of form, but of effect – does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?"); Id. at 544 (O'Connor, J., dissenting) ("The principle [underlying the Court's decision] thus would apply . . . to all determinate sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations (e.g., the federal Sentencing Guidelines)); McMillan v. Pennsylvania, 477 U.S. 79, 80 (1986) (addressing an argument that a state mandatory minimum sentencing act violated the jury trial guarantee of the Sixth Amendment).

Moreover, the Court has also held that "the futility of

21

presenting an objection . . . cannot alone constitute cause for a failure to object at trial," Engle v. Isaac, 456 U.S. 107, 130 (1982), so the fact that courts previously rejected challenges to the Sentencing Guidelines under Apprendi does not alone support a finding of cause. Thus, the fact that Vasquez's sentencing preceded the announcement of the Booker fails to excuse his procedural default to raise a Sixth Amendment challenge to the Sentencing Guidelines.

## 2. Vasquez cannot show actual prejudice

Even if Vasquez could establish that he has adequate cause to excuse his double procedural default, he has not shown that he was actually prejudiced by the alleged Booker error. To establish the "actual prejudice" requirement, a defendant must show that the error "worked to his actual and substantial disadvantage." Frady, 456 U.S. at 170. This is a demanding standard; it requires that the defendant carry a burden "significantly higher" than he would be required to satisfy on direct review under the plain-error standard. Id. at 167.

Vasquez is unable to meet the high burden of the "actual prejudice" requirement because it is unlikely that this Court would have sentenced him differently had the Sentencing Guidelines been advisory. First, Vasquez's argument that the district court erred in using a preponderance standard, rather than proof beyond a reasonable doubt, to make findings regarding Vasquez's [] does not

22

establish "actual prejudice." Since Booker did not invalidate judicial fact-finding by a preponderance, the district court's usage of a preponderance standard does not establish that this Court would have imposed a lower sentence under an advisory Guidelines regime. See United States v. Antonakopoulos, 399 F.3d 68, 75 (1st Cir. 2005) ("The error is not that a judge (by a preponderance of the evidence) determined facts under the Guidelines which increased a sentence beyond that authorized by the jury verdict or an admission by the defendant; the error is only that the judge did so in a mandatory Guidelines system.").

Second, there is no reason to believe that this Court would have, under an advisory Guidelines regime, imposed a different sentence. Even after briefing and argument, this Court could have sentenced Vasquez more leniently, but chose instead a sentence in the middle of the GSR, suggesting that the facts and circumstances of the case, and not the then-mandatory nature of the Guidelines, determined the sentence. See United States v. Gonzalez-Mercado, 402 F.3d 294, 304 (1st Cir. 2005)(when under a mandatory guideline regime, court chooses a sentence substantially above the bottom of the GSR, that is a telling indication that the court, if acting under an advisory guideline regime, would in all likelihood have imposed the same sentence).

Indeed, rather than expressing antagonism toward the Guidelines or a desire to impose a lesser sentence, this Court's

23

pronouncements evidence its belief that the sentence it imposed was

entirely appropriate:

> This is, as the government said, a sad, unfortunate case,
> where somebody with your opportunity throws away that
> opportunity and participates in a horrendous crime
> involving the distribution of deadly drugs in this
> community which has basically reached a plague stage.
>
> This session of the United States District Court will do
> all in its power to impress upon those people like you
> who think that they are going to get away with doing this
> sort of thing in this community. You had a chance to
> help the government. You got an extremely fortunate
> break in being allowed to have your liberty in agreement
> in cooperate with the government pro-actively. And you
> violated your conditions even before you became a
> fugitive in a way that, as I've said before, may impact
> upon the reaction that this Court will have in the future
> when it's asked to allow convicted drug distributors to
> have their liberty.
>
> So you've caused a great deal of harm, but that harm –
> the reason for that harm and the one who's to blame for
> that harm is the person you see in the mirror. And I am
> going to try to impress upon you by the sentence that I
> impose now that you'd better get it.

Sn. Hg. 19-20. Thus, this case stands in direct contrast to United
States v. MacKinnon, 401 F.3d 8 (1st Cir. 2005), where the district
court considered a Guideline sentence to be imposed to be
"obscene,"[3] and to any other case where statements by the court
suggest it viewed the sentence to be "unjust, grossly unfair, or
disproportionate to the crime committed." Antonakopoulos, 399 F.3d
at 81. Since there is nothing to indicate that this Court would

---

[3]MacKinnon, 401 F.3d at 10 ("It is an obscene sentence that
has to be imposed. It is unwarranted by the conduct...but I have
no choice.").

have sentenced Vasquez differently had the Guidelines been advisory, Vasquez cannot establish that the <u>Booker</u> error "worked to his *actual* and substantial disadvantage," and therefore, his claim for resentencing must fail.

## Conclusion

Based on the foregoing, the government respectfully requests that the Court dismiss Vasquez's §2255 petition.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: *David Hennessy*
David Hennessy
Assistant U.S. Attorney

DATED:   August 15, 2005.

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by depositing in the United States mail a copy of same in an envelope bearing sufficient postage for delivery:

> Puggi Vasquez
> Inmate No. 80149-038
> FCI Fort Dix
> Unit 5751
> P.O. Box 2000
> Fort Dix, NJ 08640

This 15th day of August 2005.

*David Hennessy*
David Hennessy
ASSISTANT UNITED STATES ATTORNEY

25