FROM :                       FAX NO. :6179514504        Aug. 12 2005 02:56PM  P1

1

1            UNITED STATES DISTRICT COURT
2               DISTRICT OF MASSACHUSETTS

3

   UNITED STATES OF AMERICA      )
4                                )
                                 )
5   vs.                          )      CR No. 98-40035
                                 )
6                                )
   PUGGI VASQUEZ                 )
7

8

   BEFORE:  The Honorable Nathaniel M. Gorton
9

10                        DISPOSITION

11

12   APPEARANCES:

13        OFFICE OF THE UNITED STATES ATTORNEY (By: Michael
          Ricciuti, AUSA), One Courthouse Way, Boston,
14        Massachusetts 02210.  On behalf of the Government.

15        Vincent F. Ricciardi, Jr., Esq., 47 Harvard Street,
          Worcester, Massachusetts 01609.  On behalf of the
16        Defendant.

17

18                          United States District Court
                            Courtroom No. 2
19                          595 Main Street
                            Worcester, MA 01608
20                          Wednesday, March 27, 2002
                            3:45 P.M.
21

22
                       Cheryl Dahlstrom
23                   Official Court Reporter
                   United States District Court
24                  595 Main Street, Room 514
                    Worcester, MA 01608-2076
25        Mechanical Steno - Transcript by Computer

1               P R O C E E D I N G S.

2          THE CLERK:  Case No. 98-40035, United States vs. Puggi

3    Vasquez.  Counsel please note your appearance for the record.

4          MR. RICCIUTI:  Good afternoon, your Honor.  Michael

5    Ricciuti for the United States.

6          THE COURT:  Good afternoon, Mr. Ricciuti.

7          MR. RICCIARDI:  Good afternoon, your Honor.  Vincent

8    Ricciardi for the Defendant Vasquez.

9          THE COURT:  Mr. Ricciardi, good afternoon; Mr.

10   Vasquez.  We have Miss Piovoso and, I understand, Mr. Bush with

11   her from Probation.  Good afternoon to them.

12          MS. PIOVOSO:  Good afternoon, your Honor.

13          THE COURT:  We're here on the sentencing of Mr. Puggi

14   Vasquez.  I have received and read the Presentence Report, the

15   government's sentencing memorandum and the defendant's

16   sentencing memorandum.

17          Is there anything else that I haven't mentioned that I

18   should have received?

19          MR. RICCIUTI:  Not from the government, your Honor.

20          MR. RICCIARDI:  Not from the defendant, your Honor.

21          THE COURT:  Is there any reason why we can't discuss

22   the two submissions in open court, Mr. Ricciardi?

23          MR. RICCIARDI:  Judge, to my knowledge, there is no

24   reason that we cannot.

25          THE COURT:  All right.  Then, as I understand it, the

1   only substantive -- well, perhaps there's more than one, but

2   the issues that we have to resolve are whether or not the

3   defendant is entitled to a three-level reduction for acceptance

4   of responsibility and, at the same time, whether or not a

5   two-level increase is warranted for obstruction of justice.

6   Are those basically the issues?

7           MR. RICCIUTI:  Yes, your Honor.

8           MR. RICCIARDI:  That's correct, Judge.

9           THE COURT:  Okay.  I have read the government's

10  sentencing memorandum and the defendant's response thereto.  I

11  understand the facts in this case and the absconding in August

12  of 2000, until January of this year, and the recommendations

13  that are made to me in accordance with the guidelines that call

14  for both a withholding of the three-level reduction for

15  acceptance of responsibility and the add-on of a two-level

16  increase for obstruction.

17          I will hear from Mr. Ricciardi with respect to why I

18  shouldn't follow the recommendations that have been made to me.

19          MR. RICCIARDI:  Your Honor, with regard to the

20  acceptance of responsibility, I'd suggest to this Court that

21  Mr. Vasquez, soon after his arrest, accepted full

22  responsibility for his actions in the offenses for which he

23  stood indicted.

24          He began cooperating with the government almost

25  immediately.  That cooperation, Judge, initially involved his

1     case and those codefendants involved with his case.  With the
2     U.S. Attorney's Office, they debriefed my client and found some
3     what I consider to be valuable information.  First of all, not
4     only did he tell them his role in that investigation which was,
5     I suggest, a very limited role.  He came into that
6     investigation towards the end of the window, I would suggest,
7     and he became a pawn in the investigation the DEA was
8     conducting here in Worcester very late in the investigation.
9     He happened to come into it because of a break-up of a
10    relationship which led him to another relationship with Becky
11    Alvarado and her husband.  They had been clients of his, and
12    they took him in during the brief period of time.  That's when
13    he became involved in this illegal activity.  He had no
14    involvement in the activity prior to that point in time.

15          But, again, immediately after his arrest, he admitted
16    his responsibility and took it upon himself to cooperate.  I
17    would suggest that what information he gave to the government
18    at that time was very valuable to the government's case.  I'm
19    not saying that they did not have a good case or cases against
20    all of the codefendants, but they needed to nail down the
21    amount of certain substances that were attributed to each of
22    the defendants.  And through my client, they were able to do
23    that.  And that was done over an extended period of time.

24          My client had been released on bail, on bond, and
25    conditions of his release were extensive, and he complied with

1   all of those conditions, I say.  There was one minor incident

2   at issue, but, again, Judge Swartwood found that he was not in

3   violation.

4        Over a period of time, my client continued not only to

5   accept his responsibility but to offer himself in an attempt to

6   help himself, no question about it.  Sometime in May of the

7   year 2000, shortly before his sentence, the government took him

8   up on his proactive cooperation, and he began that cooperation

9   in May of 2000, and he continued on through the summer months

10   after his plea.

11        At some point in time after he was -- after he was

12   basically put in the custody of the DEA agent involved, Agent

13   Roberto, a number of conditions were placed on him.  And during

14   the summer of the year 2000, as he was proactive, he had

15   violated some of those conditions.  There's no question about

16   that.  He fully admits that.

17        Agent Roberto approached him at his place of

18   employment, where he should not have been employed, and

19   questioned him about it.  At that point my client became afraid

20   that his identity would be known to people that he had been

21   involved with and that his safety was in great danger.  He did

22   something that, obviously, he should not have done and he took

23   off.  He took off for an extended period of time, almost a year

24   and a half.

25        Sometime in November of the year -- November or

1    December of the year 2001, my client contacted me and indicated
2    that ho wanted to return to face sentencing.  I contacted tho
3    U.S. Attorney's Office at that point in time, and they informed
4    me that I should get in contact with the U.S. Marshal's Office.
5    I contacted Agent Taylor at that point.  It took a little
6    while, but we were able to arrange for Mr. Vasquez to fly
7    directly from Santo Domingo to New York City where he was met
8    by the marshals and transported here to Massachusetts after he
9    waived in New York.

10        There were reasons for that.  Basically, my client did
11   not want to be detained in Miami because most of the friends
12   were going to Miami.  He wanted a direct flight.  They were
13   able to get that direct flight and make successful contact with
14   Agent Taylor in bringing him here.

15        It's not to excuse what he did, your Honor.  But I
16   suggest that the reasons for his flight were real to him given
17   his predicament at the time.  His realization that he had to
18   come back to face sentencing was something that he decided
19   himself, and he made himself available at little or no expense
20   to the government or little or no work to the government.

21        I think that those issues should be taken into
22   consideration as to whether this Court should enhance his
23   sentence by two levels because he obstructed justice.

24        Additionally, those same facts, Judge, I would argue,
25   should lead this Court to reduce the level of his sentence by

1    three.  The facts that I've outlined, I suggest, give you the
2    extraordinary circumstances that the law asks for in finding
3    perhaps obstruction of justice but yet still allowing for a
4    reduction because of the acceptance of responsibility that my
5    client has exhibited.

6            Present in court today, Judge, just for your
7    information, his father, Doctor Vasquez, and his wife, Lilly
8    Vasquez, here from Puerto Rico.  They flew up to visit, to be
9    here to offer their support.  His brother, Doctor John Vasquez,
10   is here, a physician in the state of New York.  His sister is
11   here.  She's a registered nurse in the state of Connecticut
12   with whom Mr. Vasquez resided for a substantial period of time
13   after his arrest.  His girlfriend is here with his young child.

14           Again, his father's health, his son's birth and his
15   acceptance of final -- final acceptance of responsibility to
16   end this case all led him to surrender himself and to be here
17   today.  And I would ask you, Judge, not to enhance his sentence
18   by two levels for the obstruction of justice and to reduce the
19   level of sentence by three for all of the acceptance of
20   responsibility, the proactive cooperation, and the future
21   cooperation that my client intends to perform.

22           As indicated, while he was proactive, there were three
23   arrests made.  Three people are under indictment in this court
24   as a result of his proactive cooperation.  That, again, should
25   be taken into consideration.  He's still a potential witness to

1   the government.  They've indicated that to me.  And I've
2   indicated our position to the government.

3         Also, just to make note, Judge, I have been in contact
4   with Mr. Ricciuti for several months, and it was still, I
5   thought, a potential for a review by the 5K Committee of the
6   U.S. Attorney's Office.  At least I was informed of that.
7   Only, I believe, last Friday when I received the government's
8   presentencing memorandum was I informed not only the plea
9   agreement had been rejected because of his -- my client's
10  flight but that they were not going to even present the case
11  for 5K at this time.  But I should also note that the door is
12  still open at some point perhaps for a Rule 35 motion.

13        Again, given all of that, Judge, I ask for the
14  reduction and ask you not to enhance.  Thank you.

15        THE COURT:  All right.  Mr. Ricciuti.

16        MR. RICCIUTI:  Your Honor, I agree with some of what
17  Mr. Ricciardi said.  Had Mr. Vasquez complied with the
18  conditions of his release and not broken the law, we might be
19  having a different hearing today.  It might be a 5K1 hearing.
20  It's not.

21        What Mr. Vasquez did was to violate the conditions of
22  his release in a fundamental way.  He was released at the
23  request of Mr. Ricciardi and the government after he pled
24  guilty, which is something the government rarely does.  And it
25  was designed to facilitate Mr. Vasquez continuing to

1    proactively cooperate.  Mr. Vasquez was placed under some

2    restrictive conditions and placed under the supervision of a

3    DEA agent who is in court today.  He was informed of those

4    conditions in court.  He even signed the motion, the joint

5    motion, to recommend his release to comply with them.

6        What occasioned the initial contact that resulted in

7    Mr. Vasquez's flight is information that came to Agent Roberto

8    that Mr. Vasquez had adopted a false name, was living in a

9    place he was not authorized to live and essentially had adopted

10   a new identity.

11       Agent Roberto went to the business in Westboro, Mass.,

12   and there was Mr. Vasquez, under a different name, working at

13   this location, in a state he wasn't supposed to even be in.  So

14   the government moved to revoke his conditions at that time for

15   those violations.

16       I submit to the Court that the only reason why Mr.

17   Vasquez fled was because he saw his 5K in jeopardy.  He never

18   communicated to Agent Roberto any fear.  He never called the

19   police, the marshals.  And it should be noted that Mr. Vasquez

20   had frequent contact with Agent Roberto because Agent Roberto

21   was not only supervising he proactive cooperation; he was

22   supervising Mr. Vasquez in complying with his conditions of

23   release.

24       Mr. Vasquez then left the country, not just left an

25   immediate location where he saw a threat, not just left even

1    the state.  He left the United States, and he was gone for

2    almost a year and a half.  And according to the Presentence

3    Report, Paragraph 73(b), he only came back because he missed

4    his family, particularly in light of September 11th.

5         I submit to you he didn't come back here to face the

6    music.  He didn't come back to this court to own up to what he

7    did.  He didn't come back here to wipe the slate clean.

8         Mr. Ricciardi is true, what he says, that the

9    government did have a 5K1 pending.  But I also told Mr.

10   Ricciardi the reasons Mr. Vasquez provided Probation sometime

11   in March -- I believe the report came to the parties sometime

12   after March 20th -- would be relevant to the government's

13   consideration of this case.

14        The government, frankly, finds the reasons for Mr.

15   Vasquez's flight unpersuasive.  We find the reasons for the

16   length of his absence from the United States unpersuasive and

17   his lack of any communication with any of the agents

18   unpersuasive and, frankly, his reason for coming back to the

19   country.  None of them suggests that he has truly accepted

20   responsibility.  None of them provides any escape valve, if you

21   will, from the obstructive conduct he's engaged in.

22        I think Probation simply got it right.  What he did

23   was dead wrong.  It was in violation of an order imposed by

24   this Court based on an extraordinary motion the government made

25   to allow a drug defendant to walk out of court even after he

1    pled, which is an extraordinary step we rarely take.  This is

2    not an individual who was faced with any unique threat that he

3    dealt with in an inappropriate way.  He left the country.  No

4    telling how long he would have been gone, but he was gone for a

5    long time.  I think he's earned both two levels up in

6    obstructive conduct, and he's lost the three levels for

7    acceptance.

8         THE COURT:  All right.  Before I make my rulings on

9    that, I understand there was one objection to the Presentence

10   Report, Mr. Ricciardi, that had to do with material that was

11   included in the PSR.  I take it you agree that that is not --

12   has no bearing on the substantive scoring of the offense level

13   and the range, the guideline range.

14        MR. RICCIARDI:  That's correct.  It was a minor, minor

15   item that I thought was necessary to respond to.

16        THE COURT:  All right.  I agree with the government,

17   that this is a case which warrants both the addition of a

18   two-level increase for obstruction of justice -- I don't think

19   there is any more clear demonstration of an obstruction than

20   what this defendant did when he left the country after already

21   having violated his conditions of release, which is not only

22   unusual for the government to ask for but very unusual, as

23   counsel know from this session of the district court, to allow.

24        I am always reluctant to let someone who has been

25   convicted or pled guilty to a serious crime -- in this case, a

1    very serious drug offense -- to allow someone to be released in
2    the custody of a drug enforcement agent or anyone else, and I
3    do it very reluctantly. And this incident inclines me to do it
4    less frequently rather than more frequently. If anything, Mr.
5    Vasquez has hurt the cause of other defendants that would have
6    been allowed to do the same thing because of the kind of
7    conduct that he displayed.

8         So this is clearly a case which warrants an
9    obstruction of justice add-on; and for the same reasons, he is
10   not entitled to a three-level reduction for acceptance of
11   responsibility. This does not come within the exception of
12   Guideline Section 3C -- no. It's 3E1.1, Footnote 4, that does,
13   under some circumstances, allow for a downward adjustment for
14   acceptance of responsibility even where obstruction of justice
15   is found. It says, specifically, there may be, however,
16   extraordinary cases in which adjustment under both the
17   obstruction of justice and acceptance of responsibility
18   provisions may apply. But I find specifically that this is not
19   such an extraordinary case and that the defendant is not
20   entitled to any adjustment for acceptance of responsibility.

21        To continue, I need to make certain findings that are
22   recommended to me in the Presentence Report. They start at
23   Page 18, wherein it is recommended that the appropriate
24   guideline that we're dealing with here is 2D1.1, and that
25   because this defendant is being held accountable for the

1    equivalent of 767 and a fraction kilograms of marijuana,

2    Subsection (c)(5) of that guideline applies. And that calls

3    for a guideline range -- rather, a base offense level of 30.

4         The way we get to that equivalency of 767 kilograms is

5    that, specifically, this defendant is held responsible for 27.8

6    grams of cocaine powder arising from the incident that occurred

7    on October 16, 1998; and for the incident that occurred October

8    29, 1998, he's held responsible for 54.7 grams of heroin, 35.3

9    grams of crack cocaine, and 6.73 grams of cocaine powder, all

10   of which equate to the equivalent of 767 and a fraction

11   kilograms of marijuana.

12         Do counsel agree with the Court's calculations?

13         MR. RICCIUTI:  Yes, your Honor.

14         MR. RICCIARDI:  That's correct, Judge.

15         THE COURT:  The Court further finds that, pursuant to

16   Section 2D1.1(b)(6), that the defendant is entitled to a

17   two-level reduction under the so-called safety valve provisions

18   for which he has been deemed to qualify.

19         Further, the Court finds that the defendant is

20   entitled to another two-level reduction in his offense level

21   because he was a minor participant in the particular criminal

22   activity involved, those previously mentioned, in October of

23   1998, I believe -- yes, 1998. So that under 3B1.2(b) a further

24   two-level reduction is applied.

25         As previously held, the defendant will be given a

1    two-level upward adjustment for obstruction of justice, under

2    Guideline Section 3C1.1, and is not entitled to a downward

3    adjustment for acceptance of responsibility as previously

4    noted.  Therefore, the defendant ends up with a total offense

5    level of 28.

6        Turning to the defendant's criminal history, there are

7    no prior convictions.  There is a pending charge for operating

8    after suspension, but that has been continued without a

9    finding.  That does not score.  Therefore, the defendant is in

10   Criminal History Category I.  And the guideline range for

11   sentencing, therefore, is 78 to 97 months.

12       I'll hear recommendations for sentencing from the

13   government first.  Mr. Ricciuti.

14       MR. RICCIUTI:  Thank you, your Honor.  Your Honor, the

15   government leaves the specific sentence to the discretion of

16   the Court, but we argue not for a low-end recommendation.  This

17   was a serious case, as the Court has already alluded to.  This

18   involved three of the most deadly drugs that we deal with:

19   crack cocaine, heroin and cocaine powder.  And Mr. Vasquez,

20   although he came in at the tail end of a conspiracy, he came in

21   at the tail end of a bad one.

22       Mr. Vasquez poses a very unfortunate case.  He's an

23   individual who had prior brushes with the law.  The government

24   agrees the Court properly assessed  no criminal history points.

25   But he has, at Paragraphs 87 through 91, several appearances,

1     one continued without a finding in 1999 and one prior

2     possession of Class B, for which Mr. Vasquez was found not

3     guilty.

4            Although none of these score, your Honor, this is an

5     individual who was not unknown to the Criminal Justice System.

6     And, in fact, sometime in April of 2000, shortly before he

7     engaged in this conduct, he got a break in district court.

8     Unfortunately, he didn't learn his lesson through that break.

9            Equally troubling, your Honor, this is an individual

10    who comes from apparently a solid family background, a solid

11    economic background.  He was employed in the past.  He had gone

12    to school, although he hadn't graduated from the college he

13    attended.  This is not an individual without options.

14           What is most surprising about this case is Mr. Vasquez

15    came in at his arrest.  What Mr. Ricciardi said earlier was

16    completely accurate.  He provided a proffer the government

17    believed was true.  He had certainly gone well down the road to

18    cooperating.  And, yet, he threw it all away and continued what

19    appears to be a pattern of conduct that's reflected in the PSR,

20    reflected in the offense of conviction and reflected in his

21    flight, where he just doesn't seem to get the message.

22           This was a serious case of obstruction.  He knew that

23    he had done something wrong when Agent Roberto confronted him.

24    He knew he had used a false name and signed an employment

25    application attesting that what he had said was true and that

1     was going to negatively affect his ability to cooperate.  He
2     knew that he was violating many of the conditions of release
3     that he knew were extraordinary.  And in light of that offense,
4     he fled.

5          This is an individual who certainly had all of the
6     advantages; and, yet, in addition to committing those offenses,
7     he even threatened the individual whom he believed was the one
8     who told on him to Pretrial Services.

9          For all those facts, your Honor, he's just not a
10    low-end offender.  We leave the specific sentence to the
11    discretion of the Court, but we believe that this is an
12    individual who doesn't seem to understand the gravity of the
13    offenses he continues to commit.

14          THE COURT:  Mr. Ricciardi.

15          MR. RICCIARDI:  Judge, first, let me address his lack
16    of criminal history.  We have an operating after suspension
17    that was continued without a finding, minor infraction; leaving
18    the scene of a property damage accident, dismissed, nothing
19    there; compulsory insurance violation, date of offense same as
20    the preceding, dismissed, nothing there.

21          Counsel seems to indicate that in 1998 when he was
22    charged with possession of Class B controlled substance that
23    you should take that into consideration.  Judge, he was found
24    not guilty.  That wasn't dismissed.  That was not guilty.  I
25    represented him on that case.  And I'll tell your Honor that he

Case 4:04-cv-40205-NMG   Document 7-3   Filed 08/15/2005   Page 17 of 23
FAX NO. :6179514504   Aug. 12 2005 03:00PM P17

1   was arrested on a warrant for, I believe, leaving the scene or

2   the larceny case that you see here listed just beyond that.

3   While he was renovating an apartment, plaster dust was found on

4   him, and they charged him with possession of cocaine based on

5   the plaster dust. Obviously, the plaster dust, after analysis,

6   came back a no controlled substance. So, Judge, I would

7   suggest Mr. Ricciuti's suggestion to you that you should take

8   that into consideration is utterly devoid of any merit.

9        Additionally, I would ask you to look at the

10   codefendants in this case and the sentences that they received

11   and to weigh those sentences with regard to my client. Raphael

12   Ventura received a sentence of 180 months, career offender,

13   person with a terrible record. Becky Alvarado, a person with

14   no record, received 60 months. Her involvement in this case

15   was tenfold to my client's. William Diaz has defaulted. Mr.

16   Oliveras, another career offender type, 121 months, terrible

17   criminal record. Then you have Mr. Garcia, 37 months; and

18   Wanda Justiniano, 60 months. To place my client anywhere

19   beyond the low end of Level 28, Judge, I would consider to be

20   not a fair sentence.

21        Again, I should tell your Honor that this

22   investigation was a fairly lengthy investigation and that my

23   client only came into the picture in a very small window. His

24   involvement on the 16th of October of that year was culpable

25   but yet minimal. He acted as a person who provided information

1    to the cooperating informant, cooperating witness, and he

2    perhaps acted as a courier in one instance in transporting some

3    narcotic substance.  And on the 29th, what was found as a

4    result of search warrants and other conversations, again, he

5    was credited with being responsible as a joint venturer with

6    those other individuals.

7         This isn't a person who hasn't gotten the lesson,

8  '  Judge, who doesn't know the picture that he's involved with.

9    He's very well aware of it.  He was told -- he called me --

10   that anything could happen with him and his case.  Yet, he

11   still decided to surrender himself, and he did so in the most

12   convenient way to the government.

13        I would suggest, Judge, that if you're going to

14   sentence him at Level 28 that you sentence him to the minimum,

15   which is a very, very severe sentence for a first-time

16   offender, very severe for Mr. Vasquez.  And what, if anything,

17   could be done hereafter, I don't know.  But I would suggest the

18   low end to be the fair end here.  Thank you.

19        THE COURT:  Does counsel wish -- rather, does the

20   defendant wish to address the Court before sentence is imposed?

21        MR. RICCIARDI:  I informed him that you would be

22   asking that question.  May I just ask him?

23        THE COURT:  Yes.

24   (Discussion held off the record.)

25        MR. RICCIARDI:  Judge, he informs me he's just too

1    nervous and too anxious to address the Court at this time.

2        THE COURT:  Do counsel know of any reason why sentence

3  .  ought not to be imposed at this time?

4        MR. RICCIUTI:  No, your Honor.

5        MR. RICCIARDI:  No, your Honor.

6        THE COURT:  Mr. Vasquez, please stand.  This is, as

7    the government said, a sad, unfortunate case, where somebody

8    with your opportunity throws away that opportunity and

9    participates in a horrendous crime involving the distribution

10   of deadly drugs in this community which has basically reached a

11   plague stage.

12        This session of the United States District Court will

13   do all in its power to impress upon those people like you who

14   think that they are going to get away with doing this sort of

15   thing in this community.  You had a chance to help the

16   government.  You got an extremely fortunate break in being

17   allowed to have your liberty in agreement to cooperate with the

18   government proactively.  And you violated your conditions even

19   before you became a fugitive in a way that, as I've said

20   before, may impact upon the reaction that this Court will have

21   in the future when it's asked to allow convicted drug

22   distributors to have their liberty.

23        So you've caused a great deal of harm, but that harm

24  .  -- the reason for that harm and the one who's to blame for that

25   harm is the person you see in the mirror.  And I am going to

1    try to impress upon you by the sentence that I impose now that
2    you'd better get it.  If you don't get it this time, the next
3    time you appear before me or any other judge in this United
4    States District Court, you'll be going to jail for the rest of
5    your life.

6                Pursuant to the Sentencing Reform Act of 1984, it is
7    the judgment of this Court that you, Puggi Vasquez, are hereby
8    committed to the custody of the Bureau of Prisons, to be
9    imprisoned for a terms of 87 months.  This term consists of
10   terms of 87 months on each count, to be served concurrently.

11               Upon release from imprisonment, you shall be placed on
12   supervised release for a term of three years.  This term
13   consists of terms of three years on each of the Counts 1, 9 and
14   10, all such terms to run concurrently.

15               Within 72 hours of release from the custody of the
16   Bureau of Prisons, you shall report in person to the district
17   to which you are released.  While on supervised release, you
18   shall not commit another federal, state or local crime.  You
19   shall refrain from any unlawful use of a controlled substance.
20   You shall submit to one drug test within 15 days of release
21   from imprisonment and at least two periodic drug tests
22   thereafter, as directed by the probation officer.

23               In addition, you shall comply with the standard
24   conditions that are described in the sentencing guidelines at
25   Section 5D1.3(c) and with the following special conditions:

1    First, you are prohibited from possessing a firearm or other
2    dangerous weapon.

3              Second, you are to participate in a program for
4    substance abuse, as directed by the United States Probation
5    Office, which program may include testing to determine whether
6    you have reverted to the use of alcohol or drugs.  You shall be
7    required to contribute to the costs of the services for such
8    treatment based upon your ability to pay or the availability of
9    third-party payment.

10             Third, you are to use your true name and are
11   prohibited from the use of any aliases, false dates of birth,
12   false social security numbers, incorrect places of birth and
13   any other pertinent, incorrect, identifying information.

14             It is further ordered that you shall pay to the United
15   States a special assessment of $300 which shall be due and
16   payable immediately.

17             Mr. Vasquez, you have a right to appeal this sentence.
18   If you choose to appeal, you must do so within ten days.  If
19   you cannot afford an attorney, an attorney will be appointed on
20   your behalf.  Do you understand that?  I have to have a --

21             MR. VASQUEZ:  Yes.

22             THE COURT:  -- an oral response that I can hear.

23             MR. VASQUEZ:  Yes.

24             THE COURT:  Anything else?

25             MR. RICCIARDI:  Your Honor, if I may ask, if my client

22

1     is eligible for a drug program within the Department of

2     Corrections, may you order that?

3              MS. PIOVOSO:  One moment please, your Honor?

4              THE COURT:  Yes.

5              MS. PIOVOSO:  Your Honor, the defendant did not report

6     a history of substance abuse.  He will not be considered for a

7     program by the Bureau of Prisons.

8              THE COURT:  Then that request is denied.

9              Any further business to come before the Court?

10             MR. RICCIUTI:  No, your Honor.

11             THE COURT:  We're adjourned.

12             THE CLERK:  The defendant is remanded to the custody

13    of the United States Marshal.

14    (Whereupon, at 4:17 p.m. the disposition concluded.)

15

16

17

18

19

20

21

22

23

24

25

1                         C E R T I F I C A T E

2

3

4              I, Cheryl Dahlstrom, Official Reporter of the United

5     States District Court, do hereby certify that the foregoing

6     transcript, from Page 1 to Page 22, constitutes, to the best of

7     my skill and ability, a true and accurate transcription of my

8     stenotype notes taken in the matter of Criminal Action No.

9     98-40035, United States of America vs. Puggi Vasquez.

10

11

12

13

14

15                                    _____

16

17

18

19

20

21

22

23

24

25