IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

PUGGI J. VASQUEZ,
        Petitioner

v.                                    98-CR-40035

UNITED STATES OF AMERICA,
        Respondent

## CLARIFYING NOTICE PLEADING

As the parties are aware, this cause is effectively pled out.  However, the jurisprudence accompanying the United States v. Booker decision continues to evolve.  The Petitioner here has consistently been arguing that Booker applies substantively and structurally to his case, not procedurally.  Those arguments have continued to be crystallized for "why."

The accompanying pleading is provided as a notice pleading because Mr. Vasquez believes that it more clearly states his legal position.  Also, to the extent that this Court believes that any decision in this § 2255 would be mooted by the Booker Remedial Decision, this pleading clearly demonstrates why that is not so.

Accordingly, the Petitioner respectfully asks that this submission be filed purely for notice purposes because it repre-sents how he would orally argue his grounds for relief now in any hearing held to clarify the issues and arguments.

**THE UNITED STATES V. BOOKER REMEDIAL DECISION IS WITHOUT EFFECT ON THE DUE PROCESS OWED THE FACT-FINDING REQUIRED AND THE JURISDICTION NECESSARY TO SENTENCE A CRIMINAL CASE:**

The proof of facts beyond a reasonable doubt that are elements of a criminal conviction receive structural procedural protection. Trial is

> "the prime instrument for reducing the risk of convictions resting on factual error. The [trial] standard provides concrete substance for the presumption of innocence - that 'bedrock and elementary' principle whose 'enforcement lies at the foundation of the administration of justice."

In re Matter of Winship, 397 U.S. 358, 364 [1970]. The defendant is protected automatically by the structure of the trial proceeding.

> The prosecution's burden of proof to the jury of every element beyond a reasonable doubt is not lifted by a defendant's tactical decision not to contest an element of the offense."

Estelle v. McGuire, 502 U.S. 62, 72 [1991] (emphasis added). The Supreme Court decisions in Apprendi v. New Jersey, 530 U.S. 446 [2000], Blakely v. Washington, 124 S.Ct. 2531 [2004], and United States v. Booker, 125 S.Ct. 738 [2005], have unequivocally identified categories of facts previously treated only as "sentencing factors" to be "elements." Richardson v. United States, 526 U.S. 813, 817-18 [1998] (facts identified as elements receive the full panolopy of constitutional protections). In fact, it seems only to be an academic exercise for the Supreme Court to pronounce the nature of the protections clarified in Blakely v. Washington to

be structural.    Washington v. Recuenco, S.Ct. No. 05-0083 (October 17, 2005) (certiorari granted).

The Defendant here demonstrates that the fundamental considerations of jurisdiction and substantive due process require that the sentence to this case be vacated and that Defendant only be sentenced for the scope of his participation in this conspiracy proven beyond a reasonable doubt, even if this requires "saving" the Defendant from incompetent stipulations not grounded in fact.

A.  The Booker Constitutional Decision Is Not Based On Any Labels, But On Those Facts Which Legally Warrant The Imprisonment Maximum Per Se:

A deprivation of a constitutional right is, by definition, a per se miscarriage of justice .  And it has been established that the imposition of any unwarranted term of imprisonment is "constitutionally significant."    Glover v. United States, 531 U.S. 198, 202 [2001].  Either way, the error must be addressed.

What has been overlooked thus far in deciding cases like United States v. Antonakopoulos, 399 F.3d 68 (1st Cir. 2005), to United States v. Reynolds, 397 F.3d    ,    (11th Cir. 2005), is the subtle, but critical, change in language between the Supreme Court's holding in Apprendi v. New Jersey and its Blakely and Booker holdings.  The subject matter in Apprendi constrained the Supreme Court to the Due Process and Jury protection owed in a purely statutory context; the latter decisions operate on the subject matter of the sentence maximum to be imposed.

When the actual holding of United States v. Booker is analyzed, it is determined to be operating on any sentencing maximum in general, without regard to labels of "statutory maximum" or

"guideline maximum." This change in perspective renders the Circuit's approach and limitation of the holding to the labels of "statutory" and "guideline" a nullity and void.

In <u>Apprendi</u> <u>v</u>. <u>New</u> <u>Jersey</u>, 530 U.S. 466, 490 [2000], the Supreme Court held that

> "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed <u>statutory</u> maximum must be submitted to a jury, and proved beyond a reasonable doubt."

The Court ruled to the limit of the subject matter jurisdiction conferred by that controversy.

The principle which decided <u>Apprendi</u> was revisited in the context of the Washington State sentencing guideline scheme. In the <u>Blakely</u> <u>v</u>. <u>Washington</u> decision, the Court clarified that

> "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant.
>
> "In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings."

<u>Blakely</u> <u>v</u>. <u>Washington</u>, 542 U.S. ___, ___, 124 S.Ct. 2531, 2537 [2004].

The Washington State Supreme Court had originally interpreted the <u>Apprendi</u> holding as espousing the principle that the "statutory maximum" was the "absolute maximum sentence provided by the legislature for a certain offense, not the maximum sentence

allowed by the jury's findings." Washington v. Gore, 21 P.3d 262 (2001), cited in Washington v. Hughes, 110 P.3d 192 (2005).   In Hughes the Washington High Court corrected itself and conformed its holding to Blakely that the "statutory maximum" is in fact the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Ibid.

The disentanglement of the Blakely holding from statutory and guideline labeling was absolutely affirmed by the Supreme Court's rejection of the State's defense in Blakely that the Apprendi principle did not apply because the Washington State Sentencing Guidelines were only discretionary, not mandatory law. Please see the exerpt of Blakely Reply Brief addressing this precise issue, appended as Appendix A, and affirmed in Blakely v. Washington, 159 L.Ed.2d 403, 415 n. 8.

The Supreme Court distanced its constitutional holding from labels still further in deciding United States v. Booker.   It dispensed from using the "statutory" label at all and made "maxi-mum" the full noun-object of the holding.

> "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."

Booker, 125 S.Ct. at 756.

The Booker holding does not place any temporal restrictions on when the legally sufficient facts to support an ultimate sen-tence must be adduced, but it places constitutional conditions on

the quality of those facts.   And it establishes that it is the facts which authorize the sentence as constitutionally sound and legally correct, not that the legisled maximum sentence "authorizes" any sentence under it!!   This requirement for proof of facts is the hallmark of a defendant having a structural, substantive protection of first magnitude.   In re Winship, supra.

What has been overlooked in post-Booker jurisprudence across the Circuits is that the Booker Constitutional Decision has finessed the Booker Remedial Decision into being irrelevant to the Constitutional issue decided, just as the non-mandatory nature of the Washington State Sentencing Guidelines were irrele- vant to the Constitutional decision in Blakely v. Washington. The determinations of whether an error is "plain" or "harmless" is, to Appellant's understanding, res judicata.   It is neither; it is structural and substantive.   See Washington v. Hughes, supra (structural) and Bunkley v. Florida, 538 U.S. 835 [2003] (change in definition of element is substantive interpretation of law).   The District Court is inherently dis-entitled to suatain or re-impose a same sentence over again upon this review because ex post facto considerations preclude use of the Remedial approach.   Infra.

B.   The Limitation Of Indictment Substantively Restricts The Jurisdiction Of The Court To Sentence:

"It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of substantive Due Process."   Jackson v. Virginia, 443 U.S. 307, 314 [1979], citing Cole v. Arkansas, 333 U.S. 196, 201 [1948].   It is wrong, how- ever, to treat indictment protection as purely a form of Due

Process protection. It is its own cause for protection by being jurisdictional law directed at the power of Federal Government.

> "Indictment is the mechanism upon which fed-
> eral criminal jurisdiction over the person is
> premised and is 'indispensible to the power
> of the court.'"

Ex parte Bain, 121 U.S. 1, 12-13 [1887]. That the protection of indictment is not identical with the protection of the Due Process Clause is demonstrated by the fact that the indictment requirement is not imposable on the States, which it would have to be if it were grounded in Fifth Amendment Due Process. See Hurtado v. California, 111 U.S. 516 [1884].

Where an indictment fails to allege each material element of an offense, therefore, it fails to charge that subject-matter offense and deprives the Court of jurisdiction over that offense. United States v. Morrison, 529 U.S. 598 [2000]. The "top down" approach in United States v. Cotton, 534 U.S. 625 [2002], is all but expressly overruled by the constitutional holding of United States v. Booker. It is again unconstitutional to enlarge the mandate of an indictment without that amendment being the further deliberation of a grand jury. United States v. Miller, 471 U.S. 130, 142-44 [1985].

As a consequence, admissions under "a plea of guilty [are] consitutionally valid only to the extent that the plea is 'volun-tary' and 'intelligent'" to the proper application of the indict-ment charge and United States v. Booker. Bousley v. United States, 523 U.S. 614, 618 [1998]. That a defendant put up no defense to an element at trial or otherwise is no legal conces-

sion the Government's burden of proof of that element beyond a reasonable doubt. Estelle v. McGuire, supra, 502 U.S. at 72.

Thus, the limitations of the indictment and of the guilty plea stand as independent obstacles to any further authority of the Court to sentence up to the maximum sentence allowed by the statute.    The consideration is directional:    the Constitution only allows the defendant to be sentenced up to a limit supported by the proven facts; it does not authorize any sentence less than the statutory maximum.    That sentence is the absolute penalty maximum which may not be exceeded regardless of all facts. Therefore, it is not, as is currently being done, that a statutory maximum sentence "authorizes" any sentence less than it a la Williams v. New York, 337 U.S. 291 [1949].    That era is mercifully over.    The Due Process recognitions begun in Townsend v. Burke and generalized in Gardner v. Florida, 430 U.S. 349 [1991] (defendant possesses Due Process protection at sentencing), have now reached the realities of a modern criminal prosecution.

**THE DISTRICT COURT WAS CONSTRAINED TO APPLY THE UNITED STATES SENTENCING GUIDELINES TO THE STANDARD OF THE BOOKER CONSTITUTIONAL DECISION BY PRINCIPLES OF EX POST FACTO LIMITATION ON CHANGES TO THE LAW:**

The Ex Post Facto Clause is a Constitutionally promulgated criminal law directed against the power of the Federal Government proscribing the enforcement of criminal statutes having a punitive effect on a citizen, directly or indirectly, for events completed before the statute became law. Ex post facto analysis does not turn on the identification of equity in a case; when the defining conditions exist, enforcement must be absolute. More than any other constitutional provision in practice, the Ex Post Facto Clause affirms the ascendency of the Citizen over Government and tests the honesty of Government to its founding principles.

A.  Basic Tenets Of Ex Post Facto:

The gravitas of ex post facto is such that James Madison was prompted to remark that "ex post facto laws . . are contrary to the first principles of the social compact and to every principle of sound legislation." The Federalist, No. 44, p. 282 (C. Rossiter, ed. 1961) Alexander Hamilton described the ex post facto prohibition as among the three protections "greater to liberty and republicanism than any [others the Constitution] contains." The Federalist, No. 84, p. 511 (C. Rossiter, ed. 1961). Modern commentary is no less deferential.

> The prohibition "is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."

Landgraf v. U.S.I. Film Products, 511 U.S. 244, 265 [1994].

Four basic categories of ex post facto prohibition on govern-
ment were enumerated over two hundred years ago by Justice Chase
in Calder v. Bull, 3 U.S. 386, 390 [1798], and, spanning the ambit
of observed situations, still serve as the paradigm of ex post
facto meaning:

1)  Every law that makes an action, done before the
    passing of the law, and which was innocent when
    done, criminal; and punishes such action;

2)  Every law that aggravates a crime, or makes it
    greater than it was when committed;

3)  Every law that changes the punishment, and inflicts
    a greater punishment than the law annexed to the
    crime when committed; and

4)  Every law that alters the legal rules of evidence,
    and receives less, or different testimony, than the
    law required at the time of the commission of the
    offense, in order to convict the offender [and thus
    authorize the potential greater penalty annexed to
    the unlawful conduct or status].

Ibid. (emphasis added).  Later pronouncements of the Supreme Court
give more succinct expression.  Fletcher v. Peck, 10 U.S. 87, 138
[1810] ("An ex post facto law is one which renders an act punish-
able in a manner in which it was not punishable when it was
committed.").  Also see Cummings v. Missouri, 71 U.S. (4 Wall)
277, 328 [1867], and Malloy v. South Carolina, 237 U.S. 180, 184
[1915].

> "The [ex post facto] prohibition . . is an
> additional bulwark in favor of the personal
> security of the subject, to protect his or her
> person from punishment by legislative acts
> having retrospective operation. [    ].  The
> restriction not to pass any ex post facto law
> was to secure the person of the subject from
> injury, or punishment, in consequence of such
> law."

Calder, at 390.  "The Constitution's prohibition and the judicial
interpretation of it rest upon the notion that . . the criminal
quality attributable to an act [i.e., conduct or status], either
by the legal definition of the offense or by its nature or the
amount of punishment imposed for its commission, should not be
altered by legislative enactment, after the fact, to the disadvan-
tage of the accused."   Beazell v. Ohio, 269 U.S. 167, 170 [1925].
It is the person who is being Constitutionally protected by the
definitions in place.

> "Through [the ex post facto] prohibition, the
> Framers sought to assure that legislative Acts
> give fair warning of their effect and Citizens
> can rely on their meaning until explicitly
> changed."

Weaver v. Graham, 480 U.S. 24, 28 [1981]; Dobbert v. Florida, 432
U.S. 282, 298 [1977].   When any ex post facto condition is
created, "all these, and similar laws, are manifestly unjust and
oppressive."   Calder at 390 (emphasis added).

    B.   Regardless Of The Source Of Ex Post Facto Violation
       The Violation Is Per Se Offensive:

It was the comprehension of the Founders that the Judicial
Branch of Government would only be jus direre to the meaning of
the law and the Executive Branch would be jus implere to that
meaning.  To them, once "given," (jus dare), law itself had immut-
able meaning.   Therefore, the ex post facto prohibition was only
written into the legislative Articles.      Rogers v. Tennessee, 532
U.S. 451, 475-77 [2004] (discussing legal principles accompanying
drafting of Constitution).

But the importance of ex post facto was such that, in one of
the most reflective documents ever drafted, the ex post facto pro-
hibition is set down twice.  Article I, § 9, cl. 3, and Article I,
§ 10, cl. 1.    It is therefore inconceivable that the Framers of
the Constitution believed that the protection they had incorporat-
ed could be circumvented by achieving the offending result through
the alternative of executive or judicial fiat.    Even when the
modern Supreme Court has attempted to claim that the judicial ex
post facto prohibition is not "jot for jot" to the Calder list, it
must still acknowledge that "the limitations on ex post facto
judicial decision making are inherent in the notion of Due
Process."    Rogers v. Tennessee, 532 U.S. at 456.    In practice,
this means that if a

> "legislature is barred by the Ex Post Facto
> Clause from passage of such a law, it must
> follow that [the] Supreme Court is barred by
> the Due Process Clause from achieving precise-
> ly the same result by judicial construction."

Bouie v. Columbia, 378 U.S. 347, 353-54 [1964]; also see Marks v.
United States, 430 U.S. 188, 190-92 [1977] (case of a judicial
interpretation expanding the scope of a statutory offense to
include additional conduct not previously identified as criminal).
The correct analysis of the Booker Remedial Decision is for how it
would be treated if done by Congress.  Then, just as the right to
appeal is not explicitly conferred, once the right was statutorily
created, the Courts were obligated to enforce it in all its
respects by the Due Process Clause.    Rodriguez v. United States,
395 U.S. 327 [1969].

Previously, the Courts have not been shy.  When the Executive Branch has broadened the scope of a penal regulation by administrative pronouncement, ex post facto has been universally enforced on the Executive by the Courts themselves.  E.g., <u>Mersky</u> <u>v</u>. <u>United States</u>, 361 U.S. 431, 455 [1960] (limiting scope of importation labeling regulation outright, but alternately would enforce ex post facto prohibition from prosecution).

Thus, whether the "label" given to the effective change was "interpretation" or anything else, the ex post facto analysis is always <u>separately</u> based on the actual effect of the change in the law.

C.  Procedural Changes Must Be <u>Purely</u> Procedural In Order Not To Be Subject To The Ex Post Facto Prohibition:

To the extent that incidental procedures are used to implement the law, that is not an ex post facto concern.  <u>Beazell</u> <u>v</u>. <u>Ohio</u>, <u>supra</u>; <u>Dobbert</u> <u>v</u>. <u>Florida</u>, <u>supra</u> (<u>Ex</u> <u>Post</u> <u>Facto</u> Clause has no application to changes which relate <u>exclusively</u> to a remedy or mode of procedure).

But when the remedy or procedures crosses into demonstrable effect on the substance of the governmental actions on the person, it becomes no longer "purely" procedural in character.[1]  The ex post facto "inhibition was leveled at the thing, not the name . . under any form, <u>however disguised</u>.  <u>Cummings</u> <u>v</u>. <u>Missouri</u>, 71 U.S. (4 Wall) 277, 328 [1867] (emphasis added).  Certain "procedural"

---

[1] New procedural rules that benefit a defendant apply retroactively on direct appeal automatically.  <u>Griffith</u> <u>v</u>. <u>Kentucky</u>, 479 U.S. 314, 328 [1973].  It was once a Common Law practice to benefit all prisoners affected by a positive change in criminal law.

changes have historically occurred which were identified on review
to increase the possible maximum punishment range that could be
imposed for criminal acts or changed the ingredients of the
offense, or the acts necessary to expose the accused to greater
potential penalty.  They have universally been recognized by their
effect, and condemned.   E.g., Miller v. Florida, 482 U.S. 423
[1987].

> "[T]he Ex Post Facto Clause forbids the [gov-
> ernment] from enhancing the measure of punish-
> ment by altering the substantive 'formula'
> used to calculate the applicable sentencing
> range."

California Dept. of Corrections v. Morales, 514 U.S. 499, 508
[1995].

When the Sentencing Commission amended its own Guidelines, it
distinguished regularly between amendments that were purely
procedural and those that were substantive.   Those that were
"clarifying" were fully retroactive for stating what the Guideline
always meant.   U.S.S.G. § 1B1.11(b)(1).   On the other hand, those
that were substantive were never retroactive if they disadvantaged
the defendant.   See, for example, United States v. Kepp, 951 F.2d
521, 526 (3rd Cir. 1991) (noting that all Circuits enforce ex post
facto prohibition on all prejudicial substantive Guideline amend-
ments and collecting those cases).   The Booker Remedial Decision
certainly qualifies as a substantive amendment.   Vide infra.

It cannot be left simply to someone's naming of the change as
procedural (or today "remedial") to define what is legally occur-
ring.   Collins v. Youngblood, 497 U.S. 37, 46 [1990], citing

<u>Gibson</u> <u>v</u>. <u>Mississippi</u>, 162 U.S. 565, 590 [1896].  <u>Collins</u> goes on
to point out that

> "Subtle ex post facto violations are no more
> permissible than overt ones.  .  .  .  The Con-
> stitutional prohibition is addressed to laws,
> '<u>whatever</u> <u>their</u> <u>form</u>,' which alter the nature
> of the offense, or increase the [authorized]
> punishment."

<u>Collins</u>, 497 U.S. at 46, quoting <u>Beazell</u> <u>v</u>. <u>Ohio</u>, 269 U.S. at 170
(emphasis added).  When arguments are made to the contrary of ex
post facto, the fallacy is that the argument generally "fails to
acknowledge that it is the effect, <u>not</u> <u>the</u> <u>form</u>, of the law that
determines whether it is ex post facto."  <u>Weaver</u> <u>v</u>. <u>Graham</u>, 450
U.S. 24, 28 [1981].

The <u>Collins</u> Court held that "the prohibition which may not be
evaded [by its non-legislative origin] is the one defined by the
<u>Calder</u> categories."  <u>Collins</u>, 497 U.S. at 46.  Frankly, it is dif-
ficult to rationalize how judicial lawmaking could avoid any of
the four "jots" of <u>Calder</u> without violating fundamental Due
Process.

D.    The <u>Booker</u> Remedial Decision Is Ex Post Facto:

The <u>Booker</u> remedial Opinion purports to eliminate Guideline
maximum sentences as any constitutionally-based limitation on the
power of the courts to sentence for a conviction.  The unique
subtlety disguising the ex post facto violation by this part of
the <u>Booker</u> decision is that the change effected by the Opinion
operates on the Sixth Amendment protections that had legally just
been recognized by the <u>Booker</u> constitutional Opinion for having
been erroneously denied to defendants for seventeen years!    The

fact that <u>no</u> defendant was <u>ever</u> <u>constitutionally</u> <u>sentenced</u> in seventeen years gives the entirely misleading impression that no rights are being violated by a Remedy Opinion that strips those rights, and the past can remain in repose.  Per all the discussion above, however, this "appearance" can only be legally true if the Remedial change is demonstrated to be "purely procedural."  Other-wise, seventeen years of criminal defendants are entitled to the substantive sentencing protection they were originally denied, <u>nunc pro tunc</u>.

The Relief Opinion also strips the preponderance of evidence protection that had been traditionally afforded all Guideline sentencings.  While less than the sentencing protection identified as required by the <u>Booker</u> Constitutional Decision, the elimination of even preponderance protection effects a substantive change in law for defendants whose offense occurred prior to <u>Booker</u>.

In order to rationalize away ex post facto constraints, the Remedial majority portrayed its Opinion as <u>purely</u> an interpreta-tion of Congressional intent in enacting the Sentencing Reform Act (i.e., "S.R.A.") of 1984.  <u>Booker</u>, 125 S.Ct. at 750.  If just a <u>pure</u> interpretation, the Supreme Court would be articulating what the S.R.A. <u>always</u> meant.  <u>Rivers</u> <u>v</u>. <u>Roadway</u> <u>Express</u>, 511 U.S. 298, 308 [1994].  If the true meaning of the law is therefore unchang-ed, just unrecognized, the logic goes, then the remedial Opinion has effected no change in <u>entitled</u> constitutional right and has no ex post facto problem.  By this logic, the past seventeen years of defendants received a windfall for having their sentences determined to a preponderance of the evidence standard, even    if

Congress' "mistake" actually required jury proof beyond a reason-
able doubt when the statutes were finally analyzed.

While appealing in certain circles, this analysis is super-
ficial and wrong.  First, its underlying proposition requires pure
interpretation.

> "This Court will not strive to correct legis-
> lative mistakes, but will follow the intention
> as expressed."

Barnity's v. Casey's Leasee, 7 Cranch 456, 3 L.Ed. 403, 410
[1803].  The Supreme Court Remedial Decision has not just inter-
preted the S.R.A. as written.  It repeals 18 U.S.C. § 3553(b)(1)
and 18 U.S.C. § 3742(e)!  Second, the Remedial Decision publishes
law that was never litigated.    Instead of requesting further
briefing, the remedial majority adopted a solution patently pro-
Government that defendants can only challenge as fait accompli.
Mssrs. Booker and Fanfan were unconstitutionally left unequally
postured before the Court compared to the Government.    James B.
Beam Distilling Co. v. Georgia, 501 U.S. 529 [1991] (holding that
Due Process requires that litigants be equally postured vis a vis
the forum).  By its approach, the remedial majority deprived the
pro-petitioner side of notice.  And, third, the remedial mechanism
employed by the Breyer majority, i.e., judicial repeal of facially
valid statutes, is so substantive per se as to command ex post
facto restraint.  The only basis by which repeal of 18 U.S.C. §§
3553(b)(1) and 3742(e) would not be ex post facto would be for the
statutes themselves to be "repugnant to the Constitution" and
therefore always void law.    Marbury v. Madison, 5 U.S. 137, 180

[1803]. No one, however, can claim this to be the case. The World expected the Supreme Court to enforce Sixth Amendment protection at sentence, until the Breyer Opinion.

Thus, on all three bases, if the changes that the Remedial Decision makes are demonstrated to be substantive and prejudicial per any of the Calder criteria, and not merely procedural, then the Booker Remedial Decision is unenforcable at least on offenses committed before January 12, 2005.

E.   The Booker Remedial Decision Absolutely Offends
     The Third And Fourth Calder Criteria:

The Defendant makes no apology for the length of argument. Less than exhaustive treatments of the ex post facto issues are leading to judicial opinions that are "half a loaf," but which then become cited as though they were a full treatment of the question.    Where the scope of analysis required under this subsection is itself an entire subject, the Defendant gives this topic its own full next Section of argument.

THE BOOKER REMEDIAL OPINION OFFENDS THE THIRD AND FOURTH
CATEGORIES OF EX POST FACTO PROHIBITION:

When correctly analyzed, the Booker remedy absolutely effects
a fully substantive increase to the Constitutionally authorized
sentence which a federal defendant can receive for any conviction
(Calder Category III) and does so for "less evidence" than would
have been required to inflict the same sentence under the Sentenc-
ing Guidelines, both as applied (preponderance) and as they should
have been applied (beyond a reasonable doubt to a jury). Calder
Category IV. Again, to avoid the chronic underanalysis that is
endemic to the caselaw now appearing on the ex post facto subject,
the Defendant explains both the legal principles and the practic-
ality of his reasoning for the conclusion stated above.

A. Distinction Between "Charge Offense" And "Real Offense,"
   The Unacknowledged Source Of The Problem:

Originally, sentencing for felony in Shakespearian times was
death. This was eventually recognized as being over-simple to the
equity owed the convicted person. The penalty for felony was
gradually ameliorated over several centuries, but the legal
fiction that the judge should be sole arbitor of sentence was
preserved into recent times. Williams v. New York, 337 U.S. 241,
251-52 [1949] (sentence of court basically unreviewable).

Supreme Court decisions eventually appeared which placed some
protection on the sentencing process. Townsend v. Burke, 334 U.S.
736 [1948] (convicted defendant still entitled to be sentenced
only on the basis of truthful information); Townsend v. Sain, 372
U.S. 293 [1961] (truthful information and valid inferences from
that information). Eventually, it was recognized that the harms

of an erroneous sentencing could implicate Due Process generally.

> "It is now clear that the sentencing process,
> as well as the trial itself, must satisfy the
> requirements of the Due Process Clause."

Gardner v. Florida, 430 U.S. 349, 357 [1977]. It became a
standard of Due Process that the convicted defendant receive
constitutionally sufficient sentencing protection.

> "Discretion is the facility of deciding or
> determining in accordance with circumstances
> what seems fair, just, right, equitable, and
> responsible in those circumstances."

United States v. Hawkins, 275 F.3d 420, 434-35 (6th Cir. 2001).

The remedial opinion majority implicitly seeks return to the
Williams v. New York sentencing era, which in fact no longer
exists, while continuing to exploit the "relevant conduct" concept
under the guise of the Court being authorized to consider "all
information" for purpose of sentencing. Title 18 U.S.C. § 3661.

American trials, pursuant to the United States Constitution,
are charged-offense proceedings. The accused defends against the
specific charges of the Grand Jury and extensive protection goes
into defining the crime against which he must defend. United
States v. Russell, 411 U.S. 423 [1973]. In the Williams era, the
Court was at least sentencing for a highly specific crime of con-
viction, nothing like the modern era of criminal law.

Under the Sentencing Reform Act, the Sentencing Commission
set up a system which was nominally charge-offense in character.
U.S.S.G. § 1A(4), "Resolution Of Major Issues." Its system, how-
ever, added "description" to the offense. Ironically, the stated

goal of allowing the sentencing court to elaborate on the offense of conviction at sentencing was said to be to prevent the Government from piling on counts of indictment as a means to prosecutorially inflate the sentence for fungible conduct.  Ibid.

In practice, the Government quickly found that, with Congressionally generous statutory maximum sentences for any one count of conviction, it could secure sentences of any magnitude by importing "read offense" conduct into any available count of conviction.

> "[The] relevant conduct rule invites the prosecutor to indict for less serious offenses, which are easy to prove, and then expand them in the probation office."

United States v. Beler, 20 F.3d 1428, 1431 (7th Cir. 1994).  It has been this opportunism rising to an intolerable level of constitutional abuse that threatened to trivialize the institution of jury trial which prompted the Supreme Court to finally act in the line of cases Jones/Apprendi/Castillo/Blakely/Shepard/Booker.[2]

The conduct being imported into the offense of conviction for sentencing was dimensionally either other crimes entirely or elements of aggravated crimes to the actual offense of conviction. The Apprendi line of cases, although couched in procedural questions, was based on the substantive reasons requiring procedural change from Guideline practice.  The ex post facto prohibition clearly demonstrates that the substantive consequences of the

---

[2] The percentage of trial in the total number of prosecutions is now something less than 3%.  United States v. Green, 346 F.Supp.2d 259, 266, 281 (D. Mass. 2004) (presenting statistics).  In order to give the appearance that jury trial remains viable, some courts treat pre-trial motions before a guilty plea as the equivalent to the defendant having pursued "trial."  Ibid.

CERTIFICATE OF SERVICE

I hereby certify that I have mailed the above Clarifying Notice Pleading to:

>David Hennessy, Esquire, A.U.S.A.
>Office of United States Attorney
>United States Courthouse
>595 Main Street
>Worcester, Massachusetts 01608

on the 11th day of January, 2006, postage prepaid.

Puggi J. Vasquez