```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

PUGGI VASQUEZ,
     Petitioner,


     V.                              CIVIL ACTION NO.
                                     04-40205-NMG

UNITED STATES OF AMERICA,
     Respondent.
```

**REPORT AND RECOMMENDATION RE:**
**PETITIONER'S MOTION UNDER 28 U.S.C. § 2255**
<u>**(DOCKET ENTRY # 1)**</u>

**July 13, 2006**

**BOWLER, U.S.M.J.**

Pending before this court is a motion to vacate, set aside, and or correct a sentence pursuant to 28 U.S.C. § 2255 ("section 2255") filed by petitioner Puggi Vasquez ("petitioner" or "Vasquez"). (Docket Entry # 1). On August 15, 2005, the government filed a response to petitioner's motion to vacate. (Docket Entry # 7). Thereafter, the district judge referred the matter to this court for a report and recommendation.

The motion alleges three grounds as a basis for vacating the sentence. First, petitioner claims that he received ineffective assistance from counsel ("attorney" or "counsel") at the sentencing hearing. Specifically, he submits that his attorney was constitutionally ineffective in his advocacy against Vasquez being held accountable for narcotics seized during the conspiracy. Second, petitioner maintains that counsel was

constitutionally ineffective in his advocacy against an upward adjustment for obstruction of justice and a downward adjustment for acceptance of responsibility credit. Finally, petitioner avers that the sentence was unconstitutionally enhanced based on findings of fact that were not proved to a jury beyond a reasonable doubt.

An evidentiary hearing is not required. As discussed below, even accepting petitioner's nonconclusory statements of fact as true to the extent not contradicted by the record, petitioner is not entitled to relief. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (setting forth evidentiary hearing standard in section 2255 proceeding); United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993) (stating "court need not give weight to conclusory allegations"); Myatt v. United States, 875 F.2d 8, 11 (1st Cir. 1989) (holding that hearing is not necessary if section 2255 motion "is conclusively refuted as to the alleged facts by the files and records of the case"). Petitioner fails in his burden to establish the need for an evidentiary hearing. See United States v. McGill, 11 F.3d at 225 (recognizing that the petitioner bears burden of establishing need for evidentiary hearing in section 2255 proceeding). The motion (Docket Entry # 1) is therefore ripe for review.

BACKGROUND

On May 19, 2000, Vasquez pled guilty to: one count of conspiring to possess cocaine base, cocaine and heroin with intent to distribute in violation of 21 U.S.C. § 846; two counts of distributing cocaine in violation of 21 U.S.C. § 841(a)(1); and aiding and abetting the same in violation of 18 U.S.C. § 2.

Vasquez pled pursuant to a written plea and cooperation agreement with the government.[1] (Docket Entry # 7, Ex. A). The plea agreement specifically states that Vasquez was responsible for the equivalent of 700 to 1,000 kilograms of marijuana, that he qualified for a cumulative five point downward adjustment, and that he was safety valve eligible upon satisfaction of the criteria for that adjustment. In signing the plea agreement, Vasquez acknowledged that he fully understood the terms of the agreement and that he was satisfied with his legal representation.

At the time of Vasquez's guilty plea, the sentencing court granted a motion by the government that Vasquez be permitted to remain on pretrial release. In late August 2000, Vasquez fled to the Dominican Republic, where he remained for approximately 18 months. After about a year, Vasquez decided that he wanted to return to the United States. Vasquez's attorney negotiated his

---

[1] A copy of the plea agreement is attached to the pre-sentence report.

return and attempted to preserve the benefits of the cooperation agreement, including the possibility of a Section 5K1 motion. On January 22, 2002, Vasquez returned to the United States and was immediately taken into custody by the U.S. Marshal Service.

The presentence report ("PSR") determined that for purposes of sentencing Vasquez should be held responsible for the equivalent of 767 and a fraction kilograms of marijuana. This amount represented the equivalent of 27.8 grams of powder cocaine from an incident that occurred on October 16, 1998, as well as the equivalent of 54.7 grams of heroin, 35.3 grams of crack cocaine and 6.73 grams of powder cocaine from an incident that took place on October 29, 1998.

Vasquez was represented by the same attorney throughout the criminal case and at the sentencing hearing. Prior to the sentencing hearing, counsel filed a sentencing memorandum explaining why Vasquez should receive an adjustment for acceptance of responsibility but not an obstruction of justice enhancement because of the "extraordinary" circumstances surrounding the case. See United States v. Yeo, 936 F.2d 628, 629 (1st Cir. 1991). At the sentencing hearing, counsel argued, among other things, that Vasquez had cooperated fully with the Drug Enforcement Administration ("DEA") following his release and that it was only out of concern for his own safety that he had left the United States. Counsel pointed to how Vasquez had

4

undertaken to return voluntarily at little or no expense to the government. Moreover, counsel emphasized that Vasquez remained available to the DEA as a potential witness in future cases.

The sentencing court ultimately rejected counsel's arguments. Pursuant to U.S.S.G. § 2D1.1 (b)(6), the court found that Vasquez was entitled to a two level reduction under the safety valve provisions for which he was deemed qualified. Further, the court found that Vasquez was entitled to an additional two level reduction under U.S.S.G. § 3B1.2 (b) because he was a minor participant in the particular criminal activity involved. Nevertheless, the court also determined that Vasquez should be given a two level upward adjustment for obstruction of justice under U.S.S.G. § 3C1.1 and that he was not entitled to a downward adjustment for acceptance of responsibility. Consequently, Vasquez's adjusted offense level ("AOL") was assessed at 28 corresponding to a guideline sentencing range ("GSR") of 78 to 97 months imprisonment.

At various times during the sentencing hearing, counsel argued that the court should not enforce the upper limit of the GSR. Counsel emphasized that Vasquez did not have a criminal history and that he had surrendered himself voluntarily in the most convenient way possible for the government. Accordingly, counsel suggested that Vasquez's sentence should reflect the lower end of the GSR. The record indicates that counsel had at

least some success in persuading the sentencing court.

On March 27, 2002, Vasquez was sentenced to 87 months imprisonment, three years of supervised release and a $300 special assessment.  Thereafter, Vasquez appealed to the First Circuit.  On July 10, 2003, the First Circuit affirmed the conviction.[2]  On October 7, 2004, petitioner filed this section 2255 motion.

DISCUSSION

I. Section 2255 Review

Section 2255 "provides for post-conviction relief in four instances, namely, if the petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack."  David v. United States, 134 F.3d at 474 (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)).  The fourth category "includes only assignments of error that reveal 'fundamental defects' which, if

---

[2] The First Circuit summarily affirmed the conviction stating:

> [W]e conclude that the district court did not clearly err in determining that the facts did not constitute an "extraordinary case" in which both an enhancement for obstruction of justice and a decrease for acceptance of responsibility might simultaneously be awarded.

(Docket Entry # 7, Ex. C, p.6).

6

uncorrected, will 'result in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'"  Id.  Stated otherwise, "apart from claims of constitutional or jurisdictional nature, a cognizable section 2255 claim must reveal 'exceptional circumstances' that make the need for redress evident."  Id.  The petitioner bears the burden of establishing the need for section 2255 relief.  Id. (citing Mack v. United States 635 F.2d 20, 26-27 (1st Cir. 1980)).

II.  Claim of Ineffective Counsel

In the case at bar, petitioner fails to set forth a constitutional violation or otherwise demonstrate exceptional circumstances justifying section 2255 relief.  In the memorandum supporting the motion to vacate, petitioner claims that he was "unconstitutionally sentenced to an inflated drug quantity due to the ineffective assistance of [counsel]."  (Docket Entry # 2). Furthermore, he alleges that counsel "should have argued that [he] had a substantial entitlement to credit for acceptance of responsibility for special circumstances."  (Docket Entry # 2).

The well established test of Strickland v. Washington, 466 U.S. 668 (1984), governs Sixth Amendment ineffective assistance of counsel claims.  To succeed under Strickland, a petitioner must demonstrate that his attorney's performance was

constitutionally deficient and concomitant prejudice. United States v. McGill, 11 F.3d at 226 (analyzing ineffective assistance of counsel claim in section 2255 proceeding); accord Phoenix v. Matesanz, 233 F.3d 77, 81 (1st Cir. 2000) (quoting Williams v. Taylor, 529 U.S. 362, 290 (2000)).  An attorney's performance is deficient where it is "so inferior as to be objectively unreasonable."  United States v. McGill, 11 F.3d at 226.  Moreover, "'[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  Lopez-Nieves v. United States, 917 F.2d 645, 649 (1st Cir. 1990) (quoting Strickland v. Washington, 466 U.S. at 690)).

Under the deficient performance prong, an attorney renders ineffective assistance when he fails to "raise an important, obvious defense without any imaginable strategic or tactical reasons for the omission."  Prou v. United States, 199 F.3d 37, 48 (1st Cir. 1999) (holding that failure of attorney to raise government's untimely filing of information seeking sentence enhancement was deficient inasmuch as the claim "was a clear winner and presenting it would have risked nothing").  For example, where a petitioner's attorney failed to argue for a downward departure due to a medical condition under U.S.S.G. § 5H1.4 ("section 5H1.4"), the court in United States v. Espinoza-Godinez, 11 F.Supp.2d 1210, 1217 (D.Or. 1998), denied section

8

2255 relief in part because the petitioner's physical condition was not sufficiently extraordinary under section 5H1.4.

With respect to both allegations of deficient performance, petitioner's counsel was far from ineffective. Petitioner initially maintains that he was unconstitutionally sentenced for possession of an inflated drug quantity due to ineffectual representation from counsel. In making this claim, petitioner posits that had counsel elaborated on certain facts, such as the personal circumstances which allegedly led to petitioner's participation in the conspiracy, he would not have been held responsible for the 54.7 grams of heroin, the 35.3 grams of crack cocaine and the 6.73 grams of powder cocaine which were recovered from codefendants during the October 29, 1998 incident. Nevertheless, under U.S.S.G. § 1B1.3 (a)(1)(B), an individual in a jointly undertaken criminal activity is responsible for all reasonably foreseeable acts of others in furtherance of the jointly undertaken criminal activity. U.S. v. LaCroix, 28 F.3d 223, 227 (1st Cir. 1994). Thus, the mere fact that petitioner was not present when the illicit materials were seized does not absolve him of responsibility.

Petitioner's claim is further undermined by the fact that had counsel raised any of these peripheral matters at sentencing, he would have contradicted the terms of the plea agreement. As part of the plea agreement, petitioner attested that he was

9

"responsible for the equivalent of 700 to 1,000 kilograms of marijuana." (Docket Entry # 7, Ex. A). Therefore, any contrary claim could have jeopardized concessions counsel had obtained from the government, including acceptance of responsibility credit.

Short of petitioner's present allegations, there is nothing in the record to suggest that petitioner entered into the plea agreement for any other reason than because he believed that doing so would be in his best interest. Indeed, there is strong evidence to suggest that petitioner entered into the plea arrangement having carefully considered his options with counsel. As petitioner attested in the agreement:

> I am satisfied with the legal representation provided to me by my attorney. We have discussed the charges against me, possible defenses I might have, the terms of this Plea Agreement and whether I should go to trial. I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty and I believe this Agreement is in my best interest.

(Docket Entry # 7, Ex. A). There are possible grounds for canceling a plea, among them ineffective representation by counsel. See Hill v. Lockhart, 474 U.S. 52, 56 (1985) (holding that ineffective assistance of counsel may undermine the voluntariness of a guilty plea). Nevertheless, there is no evidence to suggest that such circumstances exist in the case at bar.

Nor is there evidence to suggest that counsel's representation of petitioner was ineffective or deficient. Prior to petitioner's return to the United States, counsel worked with representatives of the U.S. Marshal Service to arrange for petitioner to fly directly from Santo Domingo to New York so that he could avoid the codefendants in Miami.  A review of the record reveals that no "important" and "obvious" defenses or arguments were omitted during the sentencing hearing.  See Prou v. United States, 199 F.3d at 48.  Counsel argued emphatically against adjusting upward for obstruction of justice.  Once the court determined petitioner's AOL to be 28 with an attendant GSR of 78 to 97 months, counsel argued strenuously for the lower end of the range.  Counsel's advocacy likely played at least some role in the court's decision to impose a sentence of 87 months as opposed to the statutory maximum.

Under the prejudice prong, it is incumbent on petitioner to demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Phoenix v. Matesanz, 233 F.3d at 81 (quoting Williams v. Taylor, 529 U.S. at 390)).  For instance, in the context of a section 2255 allegation that the petitioner's attorney failed to argue for a downward departure under U.S.S.G. § 4A1.3, the First Circuit in United

11

States v. Hoyle, 237 F.3d 1, 8 (1st Cir. 2001), noted the lack of any basis under Strickland "for believing that the result would have been different if a downward departure had been sought" inasmuch as "nothing yet put before us shows that a departure motion had any promise."

Petitioner fails to demonstrate prejudice. Assuming that counsel made some error or omission, there is nothing to suggest that there is any probability that the outcome would have been different. The circumstances of petitioner's case were not so "extraordinary" as to permit an adjustment for acceptance of responsibility without an obstruction of justice enhancement. See United States v. Yeo, 936 F.2d at 629. Regardless of whom petitioner might have retained as his attorney, the fact remains that he fled the country and became a fugitive. As the court noted at sentencing, there may be no clearer demonstration of obstruction of justice.

In sum, petitioner fails to meet his burden to show both defective performance and prejudice with respect to the two alleged deficiencies of counsel. Section 2255 relief is therefore not available due to a violation of the Sixth Amendment.

## II.  Claim of Relief Under Booker

Vasquez claims that he is entitled to relief because the "Apprendi/Blakely/Booker line of case[s] has created a

substantive change in the law, which is wholly retroactive on collateral review." (Docket Entry # 9).

Vasquez does not have a cognizable claim under either Apprendi or Blakely. The Supreme Court in Blakely held that a trial court judge's decision to sentence the defendant beyond the statutory maximum of the standard range for his offense violated his Sixth Amendment right to trial by jury. Blakely v. Washington, 542 U.S. 296, 304 (2004). Similarly, the Supreme Court in Apprendi held that other than details of a prior conviction, any fact that increases the penalty for a crime beyond the stipulated maximum must be submitted to a jury and proved beyond reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490 (2000). Nevertheless, the record shows that far from being convicted in excess of the sentencing maximum for his GSR (78 to 97 months), Vasquez was given a sentence of 87 months which falls squarely within the statutory range for his AOL. Thus, Apprendi and Blakely are not determinative on these facts.

Nor does Vasquez have a cognizable claim under Booker. The Supreme Court in Booker held that the Sixth Amendment requirement of a jury trial applies to the sentencing phase of a criminal proceeding. United States v. Booker, 543 U.S. 220, 225 (2005). By applying the Sixth Amendment to the sentencing phase of a trial, the federal guidelines for sentencing became effectively advisory rather than mandatory. Id. at 263 ("District courts,

13

while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing"). That fact, however, does not give rise to a claim of relief in this case. The sentencing guidelines remain "a central consideration in sentencing." Cirilo-Munoz v. United States, 404 F.3d 527, 533 (1st Cir. 2005). The sentencing court was therefore certainly within its discretion to use the guidelines as a starting point in determining Vasquez's sentence.

Alternatively, the Booker decision cannot be applied retroactively.[3] Cirilo-Munoz v. United States, 404 F.3d at 533. While the Supreme Court in Booker did not preclude Booker from being applied retroactively, it gave no indication that a retroactive effect was intended. Id. Moreover, the First Circuit has criticized the notion of applying Booker retroactively because it would unnecessarily compromise thousands of sentences. Id. Indeed, only in very limited circumstances do new rules apply to convictions that have become final. Id. at 532 (citing Schriro v. Sumerlin, 542 U.S. 348, 351 (2004)). Such exceptions "include rules that 'prohibit criminal punishment for certain types of primary conduct,' and those that 'forbid the imposition of certain categories of punishment for particular classes of defendants.'" Id. (quoting Sepulveda v. United

---

[3] Booker was decided in January 2005. Vasquez was sentenced in March 2002 and the First Circuit affirmed the conviction in July 2003.

14

States, 330 F.3d 55, 59 (1st Cir. 2003)).  Neither exception applies to this case.

CONCLUSION

In accordance with the foregoing discussion, this court **RECOMMENDS**[4] that the instant section 2255 motion (Docket Entry # 1) be **DENIED**.

/s/  Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be filed with the Clerk of Court within ten days of receipt of the Report and Recommendation to which objection is made and the basis for such objection.  Any party may respond to another party's objections within ten days after service of the objections.  Failure to file objections within the specified time waives the right to appeal the order.  United States v. Escoboza Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).